1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE WESTERN DISTRICT OF MICHIGAN

3                    SOUTHERN DIVISION

4       UNITED STATES OF AMERICA,

5              Plaintiff,          No: 1:16cr242

6        vs.

7       LAWRENCE GERARD NASSAR,

8              Defendant.

9

10      Before:

11                    THE HONORABLE RAY KENT
                     U.S. Magistrate Judge
12                   Grand Rapids, Michigan
                        July 11, 2017
13                    Plea Proceedings

14      APPEARANCES:

15              MR. ANDREW BIRGE, U.S. ATTORNEY
                By:  MR. SEAN LEWIS
16              330 Ionia NW
                PO Box 208
17              Grand Rapids, MI 49501
                616-456-2404
18                      On behalf of the Plaintiff;

19              MR. MATTHEW NEWBURG
                Newburg Law PLLC
20              316 Taylor St.
                Grand Ledge, MI 48837
21              517-505-2323

22              MS. SHANNON MARIE SMITH
                Law Offices of Shannon M. Smith, P.C.
23              1668 S. Telegraph Rd., Suite 140
                Bloomfield Hills, MI 48302
24              248-636-2595
                        On behalf of the Defendant.

25
                TRANSCRIBED BY:  MS. KATHY J. ANDERSON, RPR, FCRR

```
 1                              July 11, 2017
 2                       PROCEEDINGS, 10:33 a.m.
 3            THE COURT:  This is 16cr242, United States of America
 4      versus Lawrence Gerard Nassar.  Mr. Lewis appears on behalf of
 5      the United States.  Mr. Newburg and Ms. Smith on behalf of
 6      Dr. Nassar.
 7            Dr. Nassar, we're here this morning because your
 8      lawyers tell me that you have decided to change your plea from
 9      not guilty to guilty pursuant to the terms of a written plea
10      agreement.  Is that right?
11            THE DEFENDANT:  Yes, Your Honor.
12            THE COURT:  Dr. Nassar, I know we covered your
13      education in an earlier hearing but refresh my memory.  Where
14      did you get your undergraduate degree?
15            THE DEFENDANT:  University of Michigan.
16            THE COURT:  All right.  Where did you get your medical
17      degree?
18            THE DEFENDANT:  Michigan State University.
19            THE COURT:  All right.  Thank you.  Dr. Nassar, do you
20      have any physical or mental ailment which would make it
21      difficult for you to either understand the charges against you
22      or what's happening in court?
23            THE DEFENDANT:  No, Your Honor.
24            THE COURT:  In the last 24 hours, have you had any
25      drugs, alcohol, or medicine?
```

1          THE DEFENDANT:  Anti hypertensive medication.

2          THE COURT:  Okay.  Blood pressure medication?

3          THE DEFENDANT:  Blood pressure medication.

4          THE COURT:  Does that blood pressure medication have

5    any impact on your cognitive abilities?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Do you feel clear of mind as you sit here

8    right now?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Dr. Nassar, you still have the right to

11    remain silent.  You don't have to say anything about this case,

12    but if we go forward with your stated desire to change your

13    plea to guilty, I'll be asking you a series of questions.  In

14    answering those questions, you'll be giving up both the right

15    to remain silent, and also the presumption of innocence because

16    some of those questions are going to go to the issue of your

17    guilt on the charges that you propose to plead guilty to.

18          Moreover, before I ask you those questions, I'm going

19    to have you placed under oath to tell the truth.  If you were

20    then to answer any of my questions falsely, you could be

21    charged with perjury or making a false statement which are

22    separate federal crimes and carry their own penalties.  Do you

23    understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you still wish to go forward?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  All right.  If you would, sir, then please

3    stand and raise your right hand and I'll have you placed under

4    oath.

5    LAWRENCE GERARD NASSAR, DEFENDANT, WAS DULY SWORN

6    THE CLERK:  Please be seated.

7    THE COURT:  Dr. Nassar, as we covered in your initial

8    appearance before me, you have the right to a lawyer.  You've

9    hired Mr. Newburg and Ms. Smith to represent you in this

10   matter.  Have you been satisfied with their representation of

11   you thus far?

12   THE DEFENDANT:  Yes, Your Honor.

13   THE COURT:  All right.  Let me remind you that if at

14   any time you were unable to continue them as your lawyers, for

15   example, perhaps you couldn't afford to pay them any longer,

16   you need only ask me, and if you qualify financially, I will

17   appoint a lawyer to represent you.  Do you understand that?

18   THE DEFENDANT:  Yes, Your Honor.

19   THE COURT:  Dr. Nassar, even as we sit here in court

20   now about to take your guilty plea, you do still have the right

21   to persist in your plea of not guilty.  You remain presumed

22   innocent of all the charges against you.  The government still

23   has the burden of proving you guilty beyond a reasonable doubt

24   on each and every element of the three crimes that it has

25   charged you with.  That would occur at a speedy and public

1   trial before a jury of 12 people drawn from the community.  At

2   that trial you would have the right through your lawyers to

3   confront and cross-examine the government's witnesses, to call

4   your own witnesses, and have the Court order them to appear and

5   testify; you would have the right to present other evidence

6   which you believe demonstrates you're not guilty of these

7   charges; and finally, you would have the right to either

8   testify in your own defense, or remain silent and not have your

9   silence used against you in any way.

10            If we go forward with your guilty plea, however, there

11   won't be a trial of any kind and you'll be giving up all of the

12   rights that I've just described except the right to continue

13   being represented by your lawyers.  Do you understand that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  As I understand the provisions of the plea

16   agreement, you're going to be pleading guilty to all three

17   counts of the superseding indictment.

18            Count I charges you with Receipt and Attempted Receipt

19   of Child Pornography.  The government claims that between

20   September 18, 2004, and December 1, 2004, in Ingham County, you

21   knowingly received child pornography that had been moved in

22   interstate or foreign commerce by means of a computer, that is,

23   you know, in plain language, you downloaded it off of, using

24   your computer off the Internet; and that that information

25   contained images of child pornography which are, some of which

are listed specifically in Count I.

Do you understand what you're charged with in Count I?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Count II charges you with Possession of Child Pornography.  The government alleges that between February 6th of 2003 and September 20th of 2016, also in Ingham County, you knowingly possessed one or more computer disks, electronic files, and other materials that contained thousands of images of child pornography.  Again some of those are specifically identified within the count.

The government alleges further that some of those images had been, again, shipped or transported in interstate commerce, meaning they had traveled across the Internet and you accessed them by use of a computer, including, but not limited to an AcomData hard drive which had been manufactured outside the State of Michigan.

Finally, that some of the images which you possessed during that time period included images of a minor who had not attained the age of 12 years.

Do you understand what you're charged with in Count II?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then finally Count III charges Destruction and Concealment of Records and Tangible Objects. The United States alleges that on or about September 19, 2016,

1  and September 20th of that year, in Ingham County, you

2  knowingly destroyed, concealed, and attempted to cover up

3  documents and tangible objects with the intent of impeding or

4  obstructing an investigation within the jurisdiction of the

5  Federal Bureau of Investigation.  In particular, the government

6  claims that you caused a third party vendor to wipe clean the

7  memory of a hard drive of a laptop computer and also threw into

8  the trash a number of external hard drives.

9      At the time you took these actions you contemplated

10  that you were the subject of an investigation into your

11  possession of child pornography.

12      Do you understand what you're charged with in

13  Count III?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  Dr. Nassar, if you're convicted of any of

16  these charges there are certain penalties which can apply.

17  With regard to Count I, the receipt of child pornography count,

18  the maximum penalties include not less than five years in

19  federal prison and up to 20 years in federal prison, a fine of

20  up to $250,000, a period of supervised release of not less than

21  five years and up to lifetime supervised release.  Supervised

22  release is a time following your release from any prison term

23  during which you would remain under the supervision of Judge

24  Janet Neff.  Judge Neff is the trial judge in your case.  Judge

25  Neff is the judge who will sentence you if your guilty plea is

1    ultimately accepted.

2             And on the subject of Judge Neff, I'm going to circle

3    back and cover an issue that I failed to cover earlier and

4    should have.  And that is, the right to have this hearing

5    conducted by Judge Neff because Judge Neff is your trial judge,

6    because Judge Neff is a United States District Judge; she was

7    appointed for life by President George W. Bush.  I'm not a

8    United States District Judge.  I'm a magistrate judge.  I was

9    appointed under a statute and serve an eight-year term.  Unlike

10   Judge Neff, I can't actually accept your plea here today or

11   find you guilty.  What I can do with your consent is to ask you

12   the questions that Judge Neff would ask as I've been doing,

13   advise you of your rights as she would, and then prepare a

14   written report to her recommending that she either accept or

15   reject your plea of guilty.  Do you understand you have the

16   right to have this hearing before Judge Neff?

17             THE DEFENDANT:  Yes, I do, sir.

18             THE COURT:  In front of you is a consent form which

19   I'm going to ask you a couple questions about.  The form

20   appears to contain your decision to allow me to handle this

21   hearing in place of Judge Neff.  Is that your signature near

22   the bottom of the form?

23             THE DEFENDANT:  Yes, it is, Your Honor.

24             THE COURT:  Did you read it and understand that form

25   before you signed it?

1        THE DEFENDANT:  Yes, we sat down with my attorneys.

2        THE COURT:  Okay.  Did anybody threaten you, coerce

3   you, or promise you anything to get you to consent to let me

4   handle this hearing?

5        THE DEFENDANT:  No, Your Honor.

6        THE COURT:  Was that a free will and voluntary

7   decision on your part?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  Okay.  Well, I believe that it was, and I

10  accept your consent and we will proceed.

11       So turning back to the question of supervised release

12  on Count I.  Supervised release is this time following your

13  release from prison during which you would remain under Judge

14  Neff's supervision.  She will impose conditions on you.

15  Conditions like you not commit any new crimes, perhaps

16  counseling, community service, seek and maintain employment,

17  whatever Judge Neff thinks the appropriate conditions are for

18  you.  If you were to violate any of the conditions while you're

19  on supervised release, Judge Neff can send you back to prison

20  for all or part of the supervised release term.

21       On Count I that supervised release term can't be less

22  than five years and could be up to life.  Understand?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  All right.  There is also a special

25  assessment of $100, and you may be ordered to pay restitution.

Victims of child pornography, the children depicted in these
images, have come forth, some of them, and said I was damaged
by this experience, and I have suffered injury, and I have
suffered expenses in the form of counseling, for example.
Congress has decided that folks who view, receive, possess
child pornography should be liable to pay restitution to those
victims.  So I don't know as I sit here now, and I don't expect
anybody does, maybe Mr. Lewis does, whether any of the children
depicted in these images that you possessed have come forward
and made claims in other cases.  But it's possible that some of
them may come forward in your case, and if so, it's also
possible that Judge Neff may order you to pay restitution to
them.

          Do you understand that?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  All right.  Do you understand then the
maximum penalties on Count I?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  On Count II, the Possession of Child
Pornography, the penalties are a little different.  There is no
mandatory minimum prison term.  The maximum prison term is
20 years, again a $250,000 fine, the same period of supervised
release, that is, five years to life, a special assessment of
$100, mandatory restitution, and an additional special
assessment under the Justice for Victims of Sex Trafficking Act

1   of 2015, another act passed by Congress to help compensate

2   victims of sex crimes.  Under that law you would be required to

3   pay a $5,000 special assessment.

4          Do you understand the maximum penalties on Count II?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  On Count III, Destruction and Concealment

7   of Records and Tangible Objects, the maximum penalties are not

8   more than 20 years in prison, a fine of not more than $250,000,

9   a period of supervised release of not more than three years,

10  and, again, the $100 special assessment.  Do you understand the

11  maximum penalties on Count III?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  If you were to go to trial on these three

14  charges, the government would have to prove certain things in

15  order to convict you.  I'm going to summarize the essential

16  elements of each charge now and after that I'm going to ask

17  Mr. Lewis to tell us what evidence the government would

18  actually produce if you were to go to trial.  And, again, that

19  will be an overview and a summary, not a detailed inventory of

20  the evidence.

21         On Count I, the charge of Receipt of Child

22  Pornography, the government would have to prove, first, that

23  you knowingly received child pornography; two, you knew it was

24  child pornography; three, the child pornography had been

25  shipped or transported in interstate or foreign commerce by

1    means of a computer.  Do you understand the three elements the

2    government would have to prove on Count I?

3               THE DEFENDANT:  Yes, Your Honor.

4               THE COURT:  On Count II, the Possession of Child

5    Pornography count, the government would have to prove, first,

6    that you knowingly possessed images of child pornography on a

7    computer disk or other medium; second, you knew that that

8    material contained child pornography; third, again, the images

9    of child pornography were shipped or transported in interstate

10   or foreign commerce by means of a computer; and fourth, that

11   the images of child pornography included images involving a

12   minor or minors who had not attained the age of 12 years.

13               Do you understand the elements the government would

14   have to prove on Count II?

15               THE DEFENDANT:  Yes, Your Honor.

16               THE COURT:  On Count III, the Destruction and

17   Concealment of Evidence count, the government would have to

18   prove, first, that you knowingly deleted or altered information

19   on your computer; second, you acted with the intent to impede

20   or obstruct or influence an investigation which you

21   contemplated was taking place; and third, that the matter was

22   within the jurisdiction of the Federal Bureau of Investigation.

23               Do you understand the elements the government would

24   have to prove on Count III?

25               THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Dr. Nassar, I'm now going to

invite Mr. Lewis to summarize the evidence the government would

offer if you went to trial.  I want you to please listen

carefully.  I'm going to have a couple questions for you when

he's finished.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Lewis.

MR. LEWIS:  Thank you, Your Honor.  I will be reading

from starting on page 5 of the plea agreement.

First, with regard to the factual basis for Count I.

If this case went to trial the government would have shown,

among other things, that, "Between September 18, 2004, and

December 1 of 2004, the defendant knowingly downloaded images

and videos of child pornography from the Internet.

He used a program called NewsRover to download this

material.  At the time the defendant downloaded this material,

he knew it was child pornography.

The defendant was in the Western District of Michigan

at the time he downloaded this material from the Internet.

The Internet is a means of facility of interstate

commerce, and the images and videos the defendant downloaded

had crossed state lines before he downloaded them."

Moving on to the factual basis for Count II.  Had this

case gone to trial, the government would have shown, among

other things that, "Between 2003 and 2016, the defendant

1    knowingly possessed thousands of images and videos of child

2    pornography on an AcomData hard drive and other devices while

3    present in the Western District of Michigan.

4         He knew the drive and devices contained child

5    pornography.  Prior to the defendant possessing the images,

6    they had been shipped and transported both across state lines

7    and using the Internet, which is a means and facility of

8    interstate commerce.

9         In addition, the images were produced using materials

10   that had been shipped or transported in or affecting interstate

11   and foreign commerce, specifically, they were produced using an

12   AcomData hard drive that was constructed of components made

13   outside of the State of Michigan.  The images of child

14   pornography possessed included images involving minors who had

15   not attained the age of 12."

16        Finally, the factual basis for Count III had this case

17   gone to trial the government would have proven that, "On or

18   about September 19 of 2016 the defendant brought his work

19   laptop to a computer service store in the Western District of

20   Michigan.  He paid the store $49 to completely wipe that

21   computer.  The store permanently deleted all of the data at the

22   defendant's request, including the operating system.

23        The defendant then turned the wiped laptop over to his

24   employer.  Forensic analysis of the machine revealed that the

25   defendant had completely wiped it of all of its contents."

1          The next day, "On or about September 20th of 2016, the

2     defendant threw away a number of hard drives, including that

3     AcomData hard drive that I discussed earlier.  On September 20,

4     2016, police recovered these hard drives from the defendant's

5     trash can, which he had placed by the road for collection.

6     Forensic analysis revealed thousands of images of child

7     pornography on two of the hard drives the defendant had

8     discarded.

9          At the time the defendant took these actions he was

10     aware that law enforcement was investigating his activities and

11     he feared that this investigation would reveal that he had

12     received and possessed child pornography.

13          He took those actions of wiping the hard drive and

14     throwing away the others with the intent to impede and obstruct

15     that investigation.  And that investigation that he feared was

16     within the subject matter of Federal Bureau of Investigation.

17          Thank you.

18          THE COURT:  Thank you, Mr. Lewis.  Dr. Nassar, did you

19     hear everything Mr. Lewis just said?

20          THE DEFENDANT:  Yes, I did.

21          THE COURT:  Is everything he just said true?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you agree that the government would be

24     able to produce all of the evidence that Mr. Lewis just

25     described?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  And do you agree that that evidence would

3   be sufficient to convict you if you went to trial?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Dr. Nassar, under the Sentencing Reform

6   Act of 1984, the United States Sentencing Commission has issued

7   advisory sentencing guidelines for judges like Judge Neff to

8   consider when formulating a sentence in a federal criminal

9   case.  Have you talked to your lawyer about these guidelines

10   and how they might apply to you?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  Do you understand that Judge Neff will not

13   be able to determine what guideline range applies to you until

14   after a presentence report has been prepared?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Do you understand that even after Judge

17   Neff determines what guideline does apply to you, she has the

18   discretion to impose a sentence that's within that range, above

19   that range, or below that range?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Do you understand that if the sentence

22   Judge Neff ultimately gives you is more severe than what you're

23   expecting, you'll still be bound by your guilty plea and will

24   not be able to withdraw it?

25        THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  Dr. Nassar, do you understand that parole

2   has been abolished in the federal criminal system and if you're

3   sentenced to prison you will not be released on parole?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Counsel, Dr. Nassar is not, I understand

6   that he is in custody on the state charges, but he is not on

7   parole, probation, or any status with any other court at this

8   time, is he?

9        MR. LEWIS:  He is not.

10       MR. NEWBURG:  He is not, Your Honor.

11       THE COURT:  Dr. Nassar, do you understand the

12   government may be able to appeal any sentence that you receive?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  All right.  Dr. Nassar, do you believe

15   that you understand the nature of the charges against you in

16   Counts I, II, III of the indictment, the penalties for those

17   charges as I've described them, and your rights as I've

18   explained them to you?

19       THE DEFENDANT:  Yes, Your Honor.

20       THE COURT:  Understanding all of those things, how do

21   you plead to Counts I, II and III of the superseding

22   indictment?

23       THE DEFENDANT:  I plead guilty as stated.

24       THE COURT:  Is your decision to plead guilty the

25   result of any force, threats, or coercion against you?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Is your decision to plead guilty a free

3     will and voluntary act by you?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Are you pleading guilty because you are in

6     fact guilty?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Is your decision to plead guilty at least

9     in part based upon promises made by the government in the

10    written plea agreement?

11         THE DEFENDANT:  No, Your Honor.  I'm confused.  Could

12    you repeat that?  I'm sorry.

13         THE COURT:  Absolutely.  So is your decision to plead

14    guilty here a result of promises or concessions made by the

15    government in the written plea agreement?

16         THE DEFENDANT:  Oh, oh, I understand.  Okay.  Yes,

17    Your Honor.

18         THE COURT:  Okay.  I mean the government, for example,

19    is agreeing not to pursue prosecution of other charges that it

20    could have pursued against you.

21         THE DEFENDANT:  Okay.  I understand.

22         THE COURT:  And is that promise by the government at

23    least in part the reason why you decided to plead guilty?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Dr. Nassar, have you read the entire plea

1      agreement?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Have you discussed it with your lawyers?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Have they been able to answer any

6      questions that you have about it?

7              THE DEFENDANT:  I have no questions, Your Honor.

8              THE COURT:  Is every statement made in the plea

9      agreement true?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Do you agree with every statement made in

12     the plea agreement?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And do you agree to be bound by every

15     statement contained?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Mr. Lewis, are there portions of the plea

18     agreement you wish to place on the record?

19             MR. LEWIS:  Yes, if I may, Your Honor.

20             Your Honor, I'll just start at the beginning and move

21     through it quickly.

22             The Court has already gone over with the defendant the

23     materials covered on the first three pages of the plea

24     agreement.

25             At the top of page 4, the Court certainly has outlined

each of the maximum penalties for each of the counts.  The plea agreement points out that the Court in sentencing the defendant may ultimately impose each of those 20-year sentences consecutively, which could result in up to a 60-year sentence.

The Court did talk a little bit about restitution in paragraph 5 on page 4.  As part of this plea agreement the defendant has agreed to not only make restitution to the victims of the child pornography, but more broadly to make restitution to all of the victims of his sexual exploitation, a determination that will be made by Judge Neff at the time of sentencing.  He specifically agrees that restitution order will not be limited to just these three counts.

Paragraph 6 just outlines that one of the consequences of this guilty plea likely means that he will lose his medical license.

Paragraph 7 advises him, in addition to the penalties the Court has outlined, he will, after being convicted, should Judge Neff accept his plea, be required to register as a sex offender for the rest of his life.

And on page 7 the Court touched a little bit on the promises that the government is making to the defendant in exchange for his guilty plea.  I did want to just talk a little bit about the non-prosecution agreement to make sure the defendant understands the limited scope of that agreement, what it actually is that the government is promising here.

1          In paragraph 11c the government promises first not to

2     prosecute the defendant with respect to Child 1 and Child 2

3     related to conduct that occurred in a swimming pool in the

4     summer of 2015.

5          The government further agrees not to prosecute him

6     with regard to two additional children, Child 3 and Child 4

7     related to conduct that occurred and that involved

8     international/interstate travel with intent to engage in

9     illicit sexual conduct.

10         His agreement while providing that the government will

11    not pursue those specific charges with respect to those four

12    individuals and those four individuals only points out, and the

13    defendant agrees, that that underlying conduct can still be

14    taken into consideration, in fact, will be taken into

15    consideration at the time of sentencing.

16         The defendant also, this agreement points out,

17    understands that the government is free to prosecute him for

18    other conduct in the past.  This agreement not to prosecute is

19    limited to four and four individuals only and only with regard

20    to the conduct outlined here.

21         On page 9, Your Honor, there's a portion of the plea

22    agreement where the parties have stipulated to certain

23    guidelines, and the defendant has agreed not to oppose the

24    scoring of those guidelines.  The defendant has indicated that

25    he has discussed those with his lawyers and realizes when one

does the math that's going to result, if again it's up to Judge
Neff whether she, to calculate those on her own, but should she
agree with the party's stipulation that's going to result in an
advisory sentencing guideline of approximately 22 to 27 years.

The government can and is not bound by that, can seek
a greater sentence, and similarly, the defendant can seek a
lesser sentence.

The Court covered the various trial rights the
defendant is agreeing to give up.  Those are outlined on page
10.

On page 11, paragraph 19, and proceeding on to page
12, that line just, the agreement outlines what would happen if
the defendant breaches his agreement, including the
stipulations that he has made in here.  The government would be
free to prosecute him for everything including those four
individuals outlined in 11c.

I would also note, Your Honor, in light of the Crime
Victims Rights Act that before we notified defense counsel that
we are in fact prepared to move forward with this agreement, I
met in person with the children, Child 1, 2, 3 and 4,
specifically Child 1 and 2 are still minors so I met with their
parents, I discussed this proposed plea agreement with them,
solicited their opinion and preferences.  And they were in
favor, expressed to me and the agents they were in favor of
this agreement.

1            Similarly, I have met in person with Child 3 and Child

2     4.  At that time they again expressed to me they were in favor

3     of this agreement, and it was only after conferring with those

4     four, either the parents or the victims directly, that we

5     communicated to defense counsel that, yes, in fact we were

6     ready to proceed with this agreement.

7            Finally, Your Honor, the defendant has admitted to

8     receiving and possessing child pornography.  I have should the

9     Court wish to see them some exemplars from his large

10    collection.  I've shown them to defense counsel.  I don't think

11    there is any dispute they are in fact child pornography.  I did

12    want to just point that out for the record.

13           THE COURT:  All right.  Thank you, Mr. Lewis.

14    Counsel, do you agree the images constitute child pornography?

15           MR. NEWBURG:  We do, Judge.

16           THE COURT:  All right.  Dr. Nassar, did you hear

17    Mr. Lewis's summary of the contents of the plea agreement?

18           MS. SMITH:  Your Honor, I'm sorry.  May I please

19    correct one thing that was stated by Mr. Lewis in his

20    summation?

21           THE COURT:  Of course.

22           MS. SMITH:  On page 7 in the section about the

23    non-prosecution agreement, he understands these alleged events

24    can be used for scoring purposes, but Dr. Nassar does not agree

25    that these incidents happened.  And that's why the

1    non-prosecution agreement reads that they are alleged incidents

2    in a pool, and alleged incidents while traveling.  I just

3    wanted to place that on the record because that was a part of

4    our plea negotiations in coming to the terms of this plea

5    agreement.

6                THE COURT:  All right.

7                MS. SMITH:  We do understand, and it does explicitly

8    state, however, that those alleged events can be used in the

9    scoring.

10               THE COURT:  All right.  Thank you.  So, Dr. Nassar,

11   you understand that --  my understanding is you contest the

12   underlying facts regarding victims 1, 2, 3 and 4, is that fair

13   to say?

14               THE DEFENDANT:  Yes, Your Honor.

15               THE COURT:  But you understand that Judge Neff can

16   treat those allegations as true and take them into

17   consideration in formulating her sentence for you.

18               THE DEFENDANT:  Yes, Your Honor.

19               THE COURT:  And you agree to it?

20               THE DEFENDANT:  Yes, Your Honor.

21               THE COURT:  All right.  Do you agree with everything

22   else that was contained in Mr. Lewis's summary of the plea

23   agreement, Dr. Nassar?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  Dr. Nassar, I'm going to direct your

attention to paragraph 13 and the stipulations regarding

calculation of the Federal Sentencing Guidelines.  Now,

subparagraph b of 13 expressly says that those stipulations are

not binding on Judge Neff, but I just want you to understand

that that is absolutely true.  That Judge Neff could come up

with different scoring than the scoring set forth here.  Do you

understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And even if she does, that would not

provide a basis for you to withdraw your guilty plea.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So even if she scores the guidelines and

the guideline range is more severe than the guideline range you

and the government have agreed is appropriate under these

facts, you would still be bound by your guilty plea.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Defense counsel, any portions of the plea

agreement that you wish to place on the record other than the

comments you've already made?

MS. SMITH:  No, Your Honor.  Thank you.

THE COURT:  Dr. Nassar, has anybody promised you

anything that is not contained in the written plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Dr. Nassar, I know this is going to sound

repetitive, and it is to an extent, but it's necessary.  So

1    bear with me, if you would.  I want to turn your attention back

2    to paragraphs 8, 9, and 10 which contain the factual basis of

3    the plea for each of the three counts, I, II and III

4    respectively.

5              Is everything, every statement made in paragraphs 8, 9

6    and 10 true?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And do you agree to be bound by every

9    statement made in paragraphs 8, 9 and 10?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  Mr. Lewis, are the, is the

12   factual basis as set forth in the stipulated facts contained in

13   paragraphs 8, 9 and 10 sufficient to support the guilty plea?

14             MR. LEWIS:  It is, Your Honor.

15             THE COURT:  All right.  Counsel, do you agree?

16             MR. NEWBURG:  We agree.

17             THE COURT:  Dr. Nassar, I find that your plea of

18   guilty is made knowingly and with full understanding of each of

19   the rights that I explained to you; that it's made voluntarily

20   and free from any force, threats or promises apart from the

21   promises contained in the written plea agreement itself.

22             I find that you understand the nature of the charges

23   contained in Counts I, II and III of the superseding

24   indictment, the penalties provided by law for those offenses,

25   your rights, and finally, that your plea has a sufficient basis

in fact to support it, specifically, the agreed upon facts
contained in paragraphs 8, 9 and 10.

I defer acceptance of the written plea agreement to
Judge Neff.  That's her decision to make, not mine.  But I am
going to recommend that Judge Neff accept your plea and find
you guilty.  I will prepare a written report and recommendation
to that effect today.

I'm ordering that a presentence investigation commence
and that a presentence report be prepared.

From your perspective, Dr. Nassar, the next thing to
happen in the case in all likelihood is you will be interviewed
by a probation officer whose job it will be to ask you a long
series of questions about going back to your childhood, your
family, your upbringing, your health, education, work history.
I don't think you have any criminal history, but they will look
into that.  And using all of that information, and other
information which they will collect, they will prepare a
lengthy written report to Judge Neff filling in information
about you.  Part of that report, and a critical piece from your
perspective, will be the scoring of the sentencing guidelines.
Your lawyers will be with you for this interview.  You'll get a
copy of the written report at least 30 days before the date set
for your sentencing which is likely to be November-ish.  It's
running about four months now between the date of a plea and
the date of sentencing.

1          Now, your lawyers will be in contact with Judge Neff

2     obviously and get the actual date and time; I'm sure meet with

3     you at length and prepare you for that.  But this report will

4     be provided to you and your lawyers at least 30 days before the

5     sentencing date.  You'll have an opportunity to talk about it

6     with them.  If there's anything in there that you disagree

7     with, for example, if your lawyers disagree with the guideline

8     scoring, they will meet with the probation officer and attempt

9     to work out any differences.  If they're unable to do that,

10    ultimately Judge Neff will resolve any outstanding issues

11    before she sentences you.

12          You'll be continued in custody of the marshals pending

13    further proceedings before Judge Neff.

14          Mr. Lewis, anything further from the United States on

15    Dr. Nassar's case?

16          MR. LEWIS:  No, thank you, Your Honor.

17          THE COURT:  All right.  Mr. Newburg, Ms. Smith,

18    anything from either of you?

19          MR. NEWBURG:  Nothing from us.  Thank you, Judge.

20          MS. SMITH:  No, Your Honor.  Thank you.

21          THE COURT:  Dr. Nassar, did you understand everything

22    that happened in court here this afternoon?

23          THE DEFENDANT:  Yes, thank you, Your Honor.

24          THE COURT:  Do you have any questions for me before I

25    adjourn your case?

1          THE DEFENDANT:  No, thank you, Your Honor.

2          THE COURT:  And of course it's still morning not

3     afternoon.  With that correction, no questions?

4          THE DEFENDANT:  No questions, Your Honor.

5          THE COURT:  Okay.  We will be adjourned.

6          THE CLERK:  All rise, please.  Court is adjourned.

7          (Proceedings concluded, 11:10 a.m.)

C E R T I F I C A T E

    I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.


                    /s/ Kathy J. Anderson

                    Kathy J. Anderson, RPR, FCRR

                    U.S. District Court Reporter

                    402 Federal Building

                    Grand Rapids, MI  49503