UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                        No.  1:16-CR-242

    v.                                  Hon. Janet T. Neff
                                       U.S. District Judge

LAWRENCE GERARD NASSAR,

    Defendant.
_____/

## UNITED STATES' SENTENCING MEMORANDUM

The defendant stands before the Court convicted of receiving child pornography, possessing child pornography, and obstructing justice.  Under federal law, the Court is to consider the full scope of the defendant's misconduct – including his long history of hands-on sexual assaults against children – when fashioning a sentence in this case.  As explained below, there is a close link between the defendant's child-pornography activities and his prolific molestation of children.  The seriousness of his conduct, and the devastating impact it has had on the lives of so many, cannot be overstated.  The defendant has proven through his conduct that he poses an immense risk to the community.  For these reasons, the United States respectfully submits that a sentence at the combined statutory maximum (720 months) is necessary to adequately account for the defendant's misconduct and meet the objectives outlined in 18 U.S.C. § 3553(a).

One of the defendant's victims, Child5, has poignantly summarized the posture of this case: "Larry Nassar is a predator without boundaries. . . .  If he is ever allowed to reenter society he will not hesitate to reoffend.  We have all done our part to get to this point.  Now it's

your turn.  I implore you to do your part, exercise your power to its fullest extent.  Show all the predators watching that we as a judicial system and community will no longer tolerate this behavior."

## I.  FACTS

The Presentence Report thoroughly summarizes the factual background of this case.  For present purposes, it is sufficient to note the following.

On July 11, 2017, the defendant pled guilty to receiving child pornography, possessing child pornography, and obstruction of justice.  (R.24: Mins., PageID.114.)  The Court accepted his guilty plea and adjudicated him guilty on July 26, 2017.  (R.28: Order, PageID.119.)  Sentencing is scheduled for December 7, 2017.  (R.29: Notice, PageID.120.)

### A.  Receipt and Possession of Child Pornography

Between 2003 and 2016, the defendant knowingly downloaded and possessed thousands of images and videos of child pornography.  Forensic examination of his electronic devices revealed in excess of 37,000 images of child pornography.  The child pornography the defendant possessed depicts children as young as infants.  The material includes images and videos of prepubescent children being vaginally and anally raped by adult males, children being digitally penetrated, prepubescent children performing oral sex, and prepubescent children engaged in other sex acts.

### B.  Obstruction of Justice

In mid-September 2016, the defendant engaged in a campaign to destroy and conceal evidence.  He did so because he was aware there was an expanding investigation into his sexual activity with and interest in children, he was aware his devices contained child pornography and other evidence of sexual exploitation of children, and he feared the investigation would uncover

his activities.  Accordingly, he paid to have his work laptop completely wiped of all content, and he discarded numerous hard drives containing child pornography.  Law enforcement recovered these drives only because the trash truck happened to be late on the day the search warrant was executed.  The defendant took these actions with the intent to impede and obstruct a contemplated investigation into his criminal activities.

### C.  Pattern Victims

The Presentence Report outlines sexual assaults against 40 children that qualify as "sexual abuse or exploitation of a minor" within the meaning of U.S.S.G. § 2G2.2.  These assaults support application of the pattern enhancement and, together with the defendant's other conduct, support the United States' request for a sentence at the combined statutory maximum.  Out of respect for the privacy and confidentiality of the victims, we refrain from reciting the details of those assaults here.  Several observations are, however, in order.

First, as part of the plea agreement, the United States agreed not to prosecute the defendant for his conduct involving Child1 - Child4.  (R.23: Plea Agm't, PageID.107.)  These children were victims of the defendant's pattern of abuse.  As noted in open court during the plea hearing, the United States made this agreement only after conferring with these victims, and the agreement was in accordance with their wishes as expressed directly to us.  Nevertheless, the United States took care to ensure that this conduct – and the defendant's sexual assaults against others – would be taken into consideration at sentencing.  In the plea agreement, the defendant expressly agreed "in determining the sentence, the Court may consider uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guideline range, and the propriety of any departure or variance from the calculated guideline range." (*Id.* at PageID.107-08.)  Moreover, the defendant agreed not to oppose the

pattern enhancement (*Id.* at PageID.109), which enhancement encompasses precisely the type of assaults suffered by Child1 – Child4, as well as the other pattern victims.[1]

Second, even if the government had pursued additional charges under 18 U.S.C. § 2423(b) and (c), convictions for such offenses would not have affected the final advisory sentencing guidelines range, given the interplay between U.S.S.G. § 2G1.3 and § 3D1.4(c). In other words, the guidelines quite properly account for this conduct regardless of whether it is charged. In addition, for nearly all of the pattern victims aside from Child1-4, the federal government lacked jurisdiction to pursue stand-alone charges for such conduct because the state had exclusive jurisdiction. Nevertheless, such conduct is properly before the Court for purposes of sentencing for all the reasons set forth in the United States' Motion to Permit In-Person Victim-Impact Statements (R.36).

Third, on November 22, 2017, the defendant pleaded guilty in state court in Ingham County to sexually assaulting (Criminal Sexual Conduct – First Degree) seven children, referred to in the Presentence Report as Child5, Child8, Child9, Child10, Child13, Child14, and Child16. During the plea hearing, the defendant acknowledged that he penetrated these victims ungloved, for his own purpose, not for any medical purpose, and against medical protocol. On November 29, 2017, the defendant also pleaded guilty in Eaton County to sexually assaulting (Criminal Sexual Conduct – First Degree) three children, referred to in the Presentence Report as Child9, Child17 and Child18. During the plea hearing, the defendant admitted he penetrated these victims without gloves for his own purpose; these penetrations were not medically accepted or appropriate treatment; and such penetrations were against medical protocol.

---

[1] Of course, the Court does not need the defendant's permission to consider uncharged conduct, but here, the defendant expressly consented.

### D. Other Young Victims of Sexual Assaults

The Presentence Report outlines sexual assaults against an additional 11 victims, about half of whom were children at the time of the assaults; the other half were young women who sought medical treatment from the defendant but were instead sexually assaulted. Because of the nature of the reported assaults, they do not qualify as "sexual abuse or exploitation of a minor" within the highly technical meaning of U.S.S.G. § 2G2.2. They are nevertheless pertinent to sentencing because they speak powerfully to the history and characteristics of the defendant, the risk he poses to the community, and the other Section 3553(a) factors discussed below.[2]

## II. THE HISTORY AND PURPOSE OF THE PATTERN ENHANCEMENT

The United States previously briefed for the Court the history and purpose of the pattern enhancement. *See* R.36, Motion to Permit In-Person Victim-Impact Statements, PageID.203-05. We adopt that briefing as if set forth fully here. As noted in that briefing, the pattern enhancement is designed to "account for past or present abuse of children." USSC, *Revised Report of the Working Group on Child Pornography and Obscenity Offenses and Hate Crime*, at 21 (1990). "[P]olicymakers and sentencing courts both agree that the conduct in question has a substantial bearing on determining the severity of the offense conduct in a given case, the extent to which public safety is jeopardized, and the appropriate type and extent of punishment." *Id*. at 24. "[I]t seems clear . . . that whether child pornography offender has a record of sexually abusing minors is a consideration within the heartland of child pornography cases." *Id.*

---

[2] The term "sexual abuse or exploitation or a minor" as used in § 2G2.2, and in other areas of federal law, is a highly technical term that turns on subtleties such as whether sexual touching was under or over clothing, whether a victim was over or under 16 when certain types of sexual assaults occurred, and whether a victim was over or under the age of 18 when other types of assaults occurred. That the sexual assaults against these 11 victims do not meet the highly technical definition of the term as used in § 2G2.2 does not make the victims any less victims of sexual assaults as that term is commonly understood, nor does it lessen the impact these assault had on them or the threat the defendant poses to the community.

The Sixth Circuit has held that testimony is not necessary to support the pattern enhancement; instead, the enhancement may be based on victim letters or other forms of reliable information. *See, e.g., United States v. Pirosko*, 787 F.3d 358, 373 (6th Cir.), cert. denied, 136 S. Ct. 518, 193 L. Ed. 2d 408 (2015) (pattern enhancement properly based on letters from victims setting forth prior sexual assaults; letters corroborated one another, and there was other corroboration); *United States v. Paull*, 551 F.3d 516, 527 (6th Cir. 2009) ("The district court's reliance on Barry's letter without live testimony from Barry is clearly permissible under our law.").

### III. SECTION 3553(a) FACTORS

#### A. The Nature and Circumstances of the Offense

The nature and circumstances of the offense are summarized above and in the Presentence Report. The defendant's actions have irreparably harmed not only the victims depicted in the images and videos in his collection, but also scores of children and young women who trusted him and sought medical care from him.

#### B. The History and Characteristics of the Defendant

The defendant has led a double-life. On the surface, he was a respected, world-renowned expert for elite athletes. He was a medical doctor, a husband, and a father. But underneath this veneer lurked a predator. For 20 years, the defendant used his position and authority to sexually exploit children. He took advantage of almost every opportunity to do so. His patients, his friends' children, and the Internet were there for the plucking. To be clear, this defendant amassed an enormous collection of abominable images of children being sexually abused, raped and degraded. He acted on his vile urges and sexually abused scores of girls and young women.

6

There is close link between the defendant's child-pornography crimes and his sexual molestation crimes. Both are connected by his sexual interest in children and his willingness to act on that interest. As one of the victims of his hands-on abuse, Child34, so aptly put it: "I became his real life child pornography subject, his plaything and experiment."

### C. The Factors Enumerated in Section 3553(a)(2)

The United States respectfully submits that a sentence at the combined statutory maximum is needed to adequately account for the factors enumerated in Section 3553(a)(2).

> *i. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

The seriousness of the defendant's crimes cannot be overstated. Crimes involving the sexual exploitation of children are among the most serious offenses there are. *See, e.g., United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) ("[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses").

The defendant's collection of child pornography included hard-core, graphic material, such as images and videos of prepubescent children being raped and sexually abused. The possession of child pornography is a very serious offense in any case, and the nature and number of images here calls for a significant punishment. The possession, receipt, transportation, and distribution of child pornography perpetuates the harm to the victims depicted in images, validates and normalizes the sexual exploitation of children, and fuels a market, thereby leading to further production of images.

But the defendant did not stop at amassing a large child-pornography collection. He further acted on his sexual interest in children by sexually abusing patients and the children of friends. Children are amongst the most vulnerable of victims to begin with, and the children the defendant sexually abused and exploited were particularly vulnerable to him for a host of

reasons, including their age and his position of power, prestige, and authority. The defendant's actions inflicted great harm on his victims, and they will bear the emotional and psychological scars from his abuse their entire lives. Society recognizes the gravity and seriousness of these offenses and has rightly provided for the severe penalties the United States recommends in this case.

The United States recognizes that the sentence it requests in this case is effectively a life sentence. Nevertheless, the defendant has justly earned it, given the scope and seriousness of his conduct. This sentence will also appropriately promote respect for the law.

> *ii. The need for the sentence imposed to afford adequate deterrence to criminal conduct.*

The United States is requesting a long period of incarceration in this case. The requested sentence is harsh, but justifiably so given the defendant's conduct. This long period of incarceration will appropriately serve as a deterrent to conduct involving the sexual exploitation of children. Those who are contemplating offending as the defendant has done must understand the legal system will not tolerate this type of behavior and the consequences will be appropriately severe.

> *iii. The need for the sentence imposed to protect the public from further crimes of the defendant.*

The defendant poses an immense threat to the community. As discussed above, he sexually abused and exploited children for his own gratification for 20 years. He did so at almost every turn. He exploited children by collecting an immense collection of images and videos of graphic child pornography. He personally abused and exploited children in his home, in his office, and at gyms, camps, and competitions around the country and around the world. He often did so even when parents were present or nearby.

The best predictor of future behavior is past behavior. The defendant has proven through his conduct that he will continue to sexually abuse and exploit children. The only way to protect the public from further predation is a very long period of incarceration, which will deprive the defendant of the opportunity to reoffend.

> iv. *The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

While incarcerated, the defendant can take advantage of programs and counseling provided by or arranged through the Bureau of Prisons. This is not to suggest that treatment or rehabilitation is a reason to incarcerate the defendant. *See Tapia v. United States*, 131 S. Ct. 2382, 2393 (2011) (a prison term may not be imposed or lengthened to foster rehabilitation). Instead, whatever the defendant's needs may be, they are not a reason to impose a shorter sentence because his needs can be met in prison.

D. The Kinds of Sentences Available

As noted in the Presentence Report, the Court may impose any term of imprisonment between 60 and 720 months. (R.41: PSR, PageID.313, ¶ 335.) Incarceration must be followed by a term of supervised release of at least five years and up to life. (*Id*. at PageID.314, ¶ 340.)

E. The Advisory Sentencing Guidelines

The Presentence Report calculated the advisory Sentencing Guidelines range as 324-405 months of incarceration, based on a total offense level of 41 and a criminal history category of I. (R.41: PSR, PageID.313 ¶336.) The Advisory Guideline range for supervised release is at least five years to life. *Id*. at PageID.314 ¶ 342.

The range summarized above was accurate at the time the final Presentence Report issued. However, since that time, the defendant pleaded guilty to another set of Criminal-

Sexual-Conduct-First-Degree offenses in Eaton County. Thus, his criminal history score would increase from 1 to 2 pursuant to USSG § 4A1.2(a)(4), and he would move to Criminal History Category II.[3] His guideline range would therefore be 360 months to life. *See* USSG § 5(A). The combined statutory maximum limits this range to 360-720 months. *See* USSG § 5G1.1(c).

F. <u>Any Pertinent Policy Statement</u>

Two sentencing-guideline provisions weigh in favor of an upward variance or departure in this case. These provisions – application notes 6(b) and 9 to Section 2G2.2 – are discussed below in Section IV (Upward Variance and/or Departure).

G. <u>Avoiding Unwarranted Sentence Disparities</u>

Unwarranted sentencing disparities are not an issue in this case. The defendant's case is unique. He not only amassed an immense child-pornography collection and destroyed evidence, but he also sexually offended against an astonishingly large number of children and young women. His predatory conduct spanned 20 years. As noted above and in the United States' other filings in this case, a child-pornography offender's "record of sexually abusing minors is a consideration within the heartland of child pornography cases."[4] Given the nature and scope of the defendant's conduct, a sentence at the combined statutory maximum is fully appropriate and will not be disparately harsh. In fact, given the defendant's most recent guilty plea in Eaton County, a 720-month sentence would be a within-guideline sentence, which further reduces the likelihood of unwarranted disparities. In any event, regardless of whether a 720-month sentence

---

[3] As per the commentary to § 2G2.2, "A conviction taken into account under subsection (b)(5) [i.e., the pattern enhancement] is not excluded from consideration of whether the conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." USSG § 2G2.2 n.5.

[4] USSC, *Revised Report of the Working Group on Child Pornography and Obscenity Offenses and Hate Crime*, at 24 (1990).

is within or above the advisory guideline range, it is appropriate given the defendant's unique history and circumstances.

      H.  Restitution

As part of his plea agreement, the defendant agreed "to make full restitution to all of the victims of his sexual exploitation, as determined by the Court at sentencing. The defendant agree[d] that the restitution order is not restricted to the loss related to the charges to which he is pleading guilty." (R.23: Plea Agm't, PageID.104).

Five victims have requested restitution.[5] In accordance with the terms of the defendant's plea agreement, the United States requests that the Court order the defendant to make restitution to the following victims in the following amount.[6] The undersigned has conferred with defense counsel and understands that the defendant does not oppose entry of a restitution order in the below amount.

| Victim | Amount |
|---|---|
| Child10 | $3,000.00 |
| Child11 | $4,516.37 |
| Child28 | $15,249.69 |
| Child29 | $32,622.46 |
| Child30 | $2,100.00 |
| **TOTAL** | **$57,488.52** |

Each victim has submitted a detailed restitution request setting forth the basis for her restitution claim. The victims seek reimbursement for past medical and counseling costs, as well as for the cost of future medical and therapeutic care. Both categories of costs are recognized as

---

[5] A sixth requested an unspecified amount of damages for "emotional distress and trauma," i.e., pain and suffering. *See* 001716. Under federal law, however, criminal restitution is limited to victims' readily identifiable expenses and does not extend to damages, such as pain and suffering. Such damages may, however, be pursued through civil remedies.

[6] Consistent with the Court's past practice, the United States requests that the name of each payee be listed in the Judgment as follows: "Child10 (confidential name and address to be provided by the U.S. Attorney's Office to the Clerk's Office)."

appropriate bases for restitution requests. *See, e.g.*, 18 U.S.C. § 2259(b) (outlining the scope and nature of restitution orders); *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001) (joining other circuits in holding that victims may be compensated for the anticipated future costs of psychological treatment under 18 U.S.C. § 2259); *United States v. Gamble*, 709 F.3d 541, 545 (6th Cir. 2013) ("'ascertainable future losses are included within the concept of "full amount of the victim's losses"'") (quoting the district court).

Each of the five victims has established that the defendant's criminal sexual conduct is a proximate cause of her injuries and the resulting costs for which she seeks restitution. Proximate causation is established not only by each victim's written submission and supporting documentation, but also by the detailed information about each that is included in the Presentence Report. Thus, restitution in the amount requested is appropriate. *See, e.g., United States v. Hargrove*, 714 F.3d 371, 375 (6th Cir. 2013) ("[c]osts for the harms [the defendant] proximately caused that are 'clearly traceable' to him . . . may be assessed directly to him").

As noted in the Presentence Report, the documentation submitted by each victim has been submitted to the Court for review. (R.41, PSR, PageID.316 ¶ 359.) If the Court would like the United States to file this documentation, we will do so under seal in accordance with 18 U.S.C. § 3509(d)(2), which states "[a]ll papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal . . . ." Copies of these materials have already been provided to the defense in discovery.

For ease of reference, we have included below the bates numbers of the documentation supporting each restitution request, as well as the paragraphs in the Presentence Report that discuss each victim.

| Victim | Bates Number of Documentation | Presentence Report Paragraphs |
|---|---|---|
| Child10 | 001826-1829 | ¶¶ 74-77 |
| Child11 | 001721-22; 001767-1797 | ¶¶ 78-79 |
| Child28 | 001723-1747 | ¶¶ 164-168 |
| Child29 | 001675-1710 | ¶¶ 169-172 |
| Child30 | 001711-1714; 001821 | ¶¶ 173-176 |

Finally, neither the defendant's current ability to pay (the United States understands the defendant currently reports having no assets, including no retirement accounts or other funds) nor the possibility of future insurance offsets, are valid reasons to decline to award restitution. *See* 18 U.S.C. § 2259 (b)(4)(B) ("A court may not decline to issue an order under this section because of— (i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."). A restitution order is appropriate because the defendant may later acquire assets through inheritance or otherwise, or, at a minimum, he may satisfy his restitution obligations through the Inmate Financial Responsibility Program.

## IV. UPWARD VARIANCE AND/OR DEPARTURE

As explained above, the United States believes the defendant's advisory guideline range is 360 to 720 months of incarceration, and thus the sentence the United States requests is a within-guideline sentence. If the Court calculates the advisory guideline range to be something less than that, the United States moves the Court to vary and/or depart upward to impose a sentence at the combined statutory maximum.

As explained above, a sentence at the combined statutory maximum is necessary to satisfy the Section 3553(a) factors. An upward variance, if necessary to achieve this sentence, is appropriate given the size of the defendant's child-pornography collection, the scope and duration of this sexual assaults against children and other vulnerable patients, and the magnitude

13

of harm he inflicted on his victims. Although the pattern enhancement technically covers the scope of the defendant's pattern conduct as outlined in the Presentence Report, it does not adequately account for the seriousness of the defendant's particular pattern of conduct. The scope of the defendant pattern conduct here is shockingly wide; it spans some 20 years; it involves an enormous number of children; and, as the victims have explained to the Court in their victim-impact statements, the impact of this conduct has been devastating. For these reasons, an upward variance is appropriate. *See, e.g., United States v. Brown*, 634 F. App'x 477, 482 (6th Cir. 2015) (affirming upward variance where "the court concluded that the [pattern] enhancement did not adequately account for the seriousness of Brown's particular pattern of conduct.").

Alternatively, the Court should depart upward to impose a sentence at the combined statutory maximum. Application note 9 to Section 2G2.2 provides, "an upward departure may be warranted if the defendant received an enhancement under subsection (b)(5) [i.e., the pattern enhancement] but that enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation involved." USSG § 2G2.2 n.9. As discussed above, the maximum sentence is appropriate in this case because of the number, scope, and duration of the defendant's sexual assaults against children and other vulnerable victims. *See, e.g., United States v. Adkins,* 169 F. App'x 961, 969 (6th Cir. 2006) (affirming upward departure where defendant had "'a long history of abuse of minors. The number of victims significantly exceeds that required [for the five-level enhancement]. The defendant preyed upon particularly vulnerable victims. In some instances, the victims were in the care and custody of the defendant, who occupied a position of trust, and he preyed upon children in playgrounds and public libraries where they should be able to feel safe from victimization.'"); *United States v. Stewart*, No.04-5629, 1999

14

WL 1111490 (6th Cir. 1999) (affirming upward departure where district court found that pattern-of-activity enhancement did "not adequately reflect the seriousness of the sexual abuse or exploitation involved in this case").

In addition, the application note to USSG § 2G2.2(b)(7), which relates to the number of images the defendant possessed, provides "[i]f the number of images substantially underrepresents the number of minors depicted, an upward departure may be warranted." USSG § 2G2.2 n.6(b)(i). The guidelines provide a five-level enhancement if a defendant possessed 600 or more images. As noted in the Presentence Report, however, investigators found more than 37,000 images of child pornography on the defendant's devices. This number dwarfs the mere 600 images needed to trigger the maximum, five-point enhancement, and the sheer size of the defendant's collection provides the Court with a basis for an above-guideline sentence.

## V.  CONSECUTIVE OR CONCURRENT SENTENCING

As noted above, the defendant pleaded guilty in state court and is pending sentencing for multiple counts of Criminal Sexual Conduct First Degree. This Court has discretion to order the defendant's federal sentence to run consecutive to or concurrently with his anticipated state-court sentence.

"District courts have discretion to order a defendant to serve his federal sentence consecutively with an anticipated state sentence." *United States v. Murphy*, 591 F. App'x 377, 385 (6th Cir. 2014) (*citing Sester v. United States*, 566 U.S. 231 (2012)). This is true even when "the anticipated state sentence [is] unknown at the time of his federal sentencing." *United States v. Stoutermire*, 516 F. App'x 583, 587 (6th Cir. 2013). A district court may also order a federal sentence to "run partially consecutive to any yet-to-be-imposed state sentence." *See, e.g., United States v. Moore*, 512 F. App'x 590, 593 (6th Cir. 2013). "When imposing consecutive sentences,

district courts must 'indicate on the record [their] rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere.'" *Murphy*, 591 F. App'x at 385 (citation omitted). A district court may also order a federal sentence to run concurrently with an anticipated state sentence, or it may defer that decision. *See, e.g., United States v. Hoffman*, 847 F.3d 878, 883 (7th Cir.), cert. denied, 137 S. Ct. 2255, 198 L. Ed. 2d 689 (2017) (affirming district court's decision to defer the decision to the state court). The guidelines provide additional guidance regarding whether a federal sentence should run consecutively with or concurrently to an anticipated state sentence. *See* U.S.S.G. § 5G1.3 (if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment"). The commentary emphasizes the Court's discretion to fashion a sentence that fairly and justly accounts for all of a defendant's conduct and ensures "reasonable incremental punishment" for federal offenses. *Id*.

For the reasons set forth in this memorandum, the Court should fashion a sentence in this case which fully accounts for all of the defendant's sexually abusive and exploitative conduct. The United States respectfully submits that a sentence at the combined statutory maximum (720 months) is necessary and appropriate to achieve this objective. The Court can then exercise its discretion regarding how this sentence should relate to the anticipated state-court sentences. In exercising its discretion, however, the Court should consider that under Michigan law, "[a] defendant who has been sentenced in a federal court may not subsequently be sentenced to a consecutive sentence in state court in the absence of statutory authority." *People v. Phillips*, 217 Mich. App. 489, 498–99, 552 N.W.2d 487, 492 (1996) (citing In re Carey, 372 Mich. 378, 381, 126 N.W.2d 727 (1964)).

**VI.     Victim Impact Statements**

The United States received dozens of victim impact statements in this case. We have forwarded these statements to U.S. Probation, which in turn provided copies to the Court. (R.41, PSR, PageID.295 ¶ 228.) If the Court would like the United States to file these victim-impact statements, we will do so under seal in accordance with 18 U.S.C. § 3509(d)(2), which states "[a]ll papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal . . . ." Copies of these materials have already been provided to the defense in discovery.[7]

As noted above and in the Presentence Report, the defendant possessed thousands of images and videos of child pornography, and hundreds were identified by NCMEC as known images of child pornography from 32 different series. Six of these victims and/or members of their families have submitted Victim Impact Statements for the consideration of sentencing courts such as this one. These statements vividly illustrate the pain and suffering inflicted on victims by the continued trafficking and possession of their images and videos. Such statements are appropriate for the Court's consideration in fashioning a fair and just sentence in this case.

Twenty-three additional victims have submitted written victim-impact statements to the Court. These victims suffered directly at the hands of the defendant. The victims write about the pain and trauma the defendant caused them, their shattered innocence and trust, the enduring impact this conduct has had on their lives, and their desire to see justice. The victims eloquently and powerfully call on the Court to severely punish Nassar and protect others from further acts of sexual predation.

---

[7]     Alternatively, if directed to do so by the Court, we will file them under restricted access, with access limited to the Court, the United States, and defense.

Finally, as discussed in the United States' previously filed motion (R.36), six victims wish to make in-person victim-impact statements at sentencing. For all the reasons set forth in the United States' motion, the Court should permit them to do so.

**VII. Conclusion**

For the reasons set forth above, the United States respectfully requests that the Court impose a sentence at the combined statutory maximum and order restitution as set forth above.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: November 30, 2016  /s/ Sean M. Lewis
SEAN M. LEWIS
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

18