UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - -

UNITED STATES OF AMERICA,

     Plaintiff,

                                                 Case No. 1:16-CR-242

            v.                                 Hon. Janet T. Neff
                                                 United States District Judge

LAWRENCE GERARD NASSAR,

     Defendant.

_____/

UNITED STATES' RESPONSE TO NASSAR'S MOTION (R.64)
FILED PURSUANT TO 28 U.S.C. § 2255

ANDREW BYERLY BIRGE
United States Attorney

SEAN M. LEWIS
Assistant United States Attorney

330 Ionia Avenue NW, Suite 501
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

# Table of Contents

I.    INTRODUCTION ........................................................................................... 4

II.    STATEMENT OF THE CASE.......................................................................... 4

   A.  Facts ........................................................................................................... 4

   B.  Procedural History ..................................................................................... 6

      1.   Indictment, Plea, And Sentencing ..................................................... 6

      2.   Appeal ................................................................................................ 7

      3.   Nassar's Section 2255 Motion........................................................... 7

III.   LAW .............................................................................................................. 8

   A.  General Principles Governing Section 2255 Motions ................................ 8

   B.  Procedural Default ..................................................................................... 8

   C.  Ineffective Assistance Of Counsel Generally ............................................ 9

   D.  Conclusory Allegations............................................................................... 9

IV.   ARGUMENT ............................................................................................... 10

   A.  Grounds 1, 2, & 3 Are Procedurally Barred ........................................... 10

      1.   Nassar's Claims In Grounds 1-3...................................................... 10

      2.   These Claims Are Procedurally Barred ........................................... 10

   B.  Nassar's Double-Jeopardy Claim Is Meritless........................................ 12

      1.   Background....................................................................................... 12

      2.   Law .................................................................................................. 13

      3.   Analysis ........................................................................................... 13

   C.  Nassar's Complaints About His Supervised-Release Conditions Are Meritless.............. 15

      1.   Background....................................................................................... 15

      2.   Law .................................................................................................. 16

      3.   Analysis ........................................................................................... 17

   D.  Nassar's Ineffective-Assistance-Of-Counsel Claims Are Meritless................................. 20

      1.   Claim Based On Criminal History Points........................................ 20

           a.   Background .............................................................................. 21

           b.   Law .......................................................................................... 22

           c.   Analysis ................................................................................... 24

      2.   Claim Based on Consecutive Sentences .......................................... 31

           a.   Background .............................................................................. 32

    b.    Law ........................................................................................................... 33

    c.    Analysis ................................................................................................... 34

V.    NO HEARING IS NECESSARY ..................................................................... 38

VI.    CONCLUSION ................................................................................................ 39

CERTIFICATE OF SERVICE ...................................................................................... 40

I.      INTRODUCTION

On December 7, 2017, the Court sentenced Nassar to 720 months in federal prison following his guilty pleas to (1) receiving and attempting to receive child pornography, (2) possession of child pornography, and (3) obstructing justice.  The Sixth Circuit affirmed on August 22, 2018.  In his timely motion under 28 U.S.C. § 2255, Nassar now claims the Double Jeopardy clause prohibited the government from convicting him of both receipt and possession of child pornography; his supervised-release conditions violate his First Amendment rights; and his attorneys provided ineffective assistance by failing to object to his criminal history score and the Court's alleged failure to consider U.S.S.G. § 5G1.3(c) and adequately explain its reasons for imposing consecutive sentences.  Nassar's Section 2255 motion is meritless and should be denied without a hearing.

II.     STATEMENT OF THE CASE

  A.  Facts

For 20 years, Nassar sexually abused and exploited children.  He amassed an enormous collection of child pornography that was unlike anything the Court had seen before.  (R.58: Sent. Tr., PageID.477.)  The material he possessed depicted children as young as infants.  (R.46: PSR, PageID.363, ¶ 23.)  The material included hard-core images and videos of prepubescent children being vaginally and anally raped by adult males, children being digitally penetrated, prepubescent children performing oral sex, and prepubescent children engaged in other sex acts.  (*Id.*)

Nassar also abused his position as a medical doctor and friend to sexually assault scores of minor patients and the children of family friends.  (R.58: Sent. Tr., PageID.473-78.)  He did so in his home, his office, gyms, camps, and at competitions around the country and the world.  (R.46: PSR, PageID.366-97, ¶¶ 41-223.)  He often did so even when parents were present or nearby. (R.58: Sent. Tr., PageID.480.)

The Presentence Report outlined sexual assaults against 40 children that qualified as "a pattern of activity involving the sexual abuse or exploitation of a minor" within the meaning of U.S.S.G. § 2G2.2(b)(5).  (R.46: PSR, PageID.366-97, ¶¶ 41-223.)  Nassar digitally penetrated dozens of children under the guise of medical treatment.  (*Id*.)  He did not wear gloves, and he inserted his fingers into victims' vaginas and anuses.  (*Id*.)  Sometimes he used lubrication; sometimes he did not.  (*Id*.)  A number of victims reported that the assaults were painful, and some even reported that Nassar caused them to tear and bleed.  (*Id*.)  Nassar's youngest victim was only six years old at the time Nassar started sexually assaulting her.  (*Id*., PageID.368, ¶ 44.)

The State of Michigan charged Nassar with sexually assaulting nine of these 40 victims.  (R.46: PSR, PageID.368, 371-80, ¶¶ 47, 69, 73, 77, 86, 93, 107, 113, 119.)  On November 22, 2017, Nassar pled guilty in Ingham County to sexually assaulting seven of the nine.  (*Id*.)  On November 29, 2017, he pled guilty in Eaton County to sexually assaulting the remaining two, as well as a third who was also a victim in the Ingham County case.  (*Id*.)

The Presentence Report also outlined sexual assaults Nassar perpetrated against an additional 11 victims, about half of whom were children at the time of the assaults; the other half were young women who sought medical treatment from Nassar but were instead sexually assaulted.  (R.46: PSR, PageID.403-08, ¶¶ 259-85.)  The assaults against these victims were included in a section of the Report entitled "Offense Behavior Not Part of Relevant Conduct," because the summarized conduct did not necessarily qualify as "pattern" conduct within the meaning of U.S.S.G. § 2G2.2(b)(5).  (*Id*., PageID.403, ¶ 259.)

Finally, in mid-September 2016, Nassar engaged in a campaign to destroy and conceal evidence.  (R.46: PSR, PageID.365-66, ¶¶ 34-39.)  He did so because he was aware there was an expanding investigation into his sexual activity with and interest in children, he was aware his

devices contained child pornography and other evidence of sexual exploitation of children, and he feared the investigation would uncover his activities. (*Id*.) Accordingly, he paid to have his work laptop completely wiped of all content, and he discarded numerous hard drives containing child pornography. (*Id*.) Law enforcement recovered these drives only because the trash truck happened to be late on the day the search warrant was executed. (*Id*.) Nassar took these actions with the intent to impede and obstruct a contemplated investigation into his criminal activities. (*Id*.)

### B. Procedural History

#### 1. Indictment, Plea, And Sentencing

On February 7, 2017, the grand jury returned a three-count superseding indictment charging Nassar with one count of receipt and attempted receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and one count of destruction and concealment of records and tangible objects, in violation of 18 U.S.C. § 1519.

On July 11, 2017, Nassar pled guilty to all three counts pursuant to a written plea agreement. (R.24: Mins., PageID.114; R.38: Plea Tr., PageID.211-39.) The Court accepted his guilty pleas and adjudicated him guilty on July 26, 2017. (R.28: Order, PageID.119.)

The Court sentenced Nassar on December 7, 2017. (R.58: Sent. Tr., PageID.459-60.) The Court calculated Nassar's total offense level as 41 and determined that he fell into criminal history category II. (*Id*., PageID.465.) These figures yielded an advisory guideline range of 720 months, which was the combined statutory maximum. (*Id*., PageID.463-65.) Both the United States and Nassar stated that they were in agreement with the Court's calculations. (*Id*. at 465.)

The Court then noted that the guidelines were only advisory and proceeded to carefully consider and weigh the factors outlined in 18 U.S.C. § 3553(a). (*Id*., PageID.476-84.) The Court discussed the seriousness of Nassar's conduct at length, noting that his child-pornography conduct

was "like nothing, no other offense of this nature that I have reviewed." (*Id.*, PageID.477.)  The Court noted that Nassar had betrayed the trust placed in him and had inflicted devastating harm on his victims. (*Id.*, PageID.477-78.)  The Court noted that "three things in the goals of sentencing" stood out in this case: the need to punish, deter, and protect. (*Id.*, PageID.481.)  After further weighing the statutory factors, the Court imposed a combined-statutory-maximum sentence (720 months), and directed that Nassar was to serve his federal sentence consecutive to his yet-to-be-imposed sentences in his two state-court cases. (*Id.*, PageID.483-84.)

After Nassar was sentenced in this federal case, he was sentenced in Ingham County to 40-175 years in prison, and in Eaton County to 40-125 years in prison. (R.64: Mot., PageID.514.)

### 2.  Appeal

Nassar filed a direct appeal, claiming (1) "the district court erred in assessing criminal history points for his state convictions because those convictions were included in the relevant conduct used to calculate his offense level, and [(2)] that his sentence is procedurally unreasonable because the district court failed to consider USSG § 5Gl.3(c) when it required him to serve his federal sentence consecutive to his state sentences." (R.60: 6th Cir. Order: PageID.494.)  On August 22, 2018, the Sixth Circuit affirmed on plain-error review. (*Id.*, PageID.496-97.)

### 3.  Nassar's Section 2255 Motion

On August 20, 2019, Nassar signed and mailed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (R.64, Mot.PageID.505, 515.)  His envelope was postmarked August 21, 2019. (*Id.*, PageID.520.)  He raised four grounds for relief in his motion, each of which is discussed in detail in Section IV, below.

### III.    LAW

#### A.  General Principles Governing Section 2255 Motions

To obtain relief under 28 U.S.C. § 2255, a movant must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255. It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citation omitted). Thus, relief under 28 U.S.C. § 2255 is reserved for a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  A movant must prove the existence of an error of constitutional magnitude that had "a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).

#### B.  Procedural Default

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice;" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003).  An ineffective assistance of counsel claim, however, is not subject to this rule. *Id*. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

### C.  Ineffective Assistance Of Counsel Generally

A petitioner claiming ineffective assistance of counsel must establish two elements: (1) that defense counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the unprofessional errors, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Goff v. Bagley*, 601 F.3d 445, 462 (6th Cir. 2010).  The Court may dispose of a claim of ineffective assistance if a petitioner fails to carry his burden of proof on either element.  *Strickland*, 466 U.S. at 697. Thus, the Court need not address the adequacy of counsel's performance when the petitioner fails to make a sufficient showing of prejudice.  *Id.*

A review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. There can be no finding of deficient performance unless a defendant shows "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "A lawyer's strategic decisions are virtually unassailable . . . ." *Crehore v. United States*, 127 F. App'x 792, 797 (6th Cir. 2005) (citation omitted).

### D.  Conclusory Allegations

"Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).  In fact, conclusory allegations are subject to summary dismissal.  *See Curry v. United States*, 39 F. App'x 993, 994 (6th Cir. 2002) ("conclusory allegations . . . are subject to summary dismissal because they are unsupported by specifics and are wholly incredible in the face of the record").  Nor is a defendant entitled to an evidentiary hearing to attempt to cure bald assertion and conclusory allegations. *See Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006).

## IV.    ARGUMENT

### A.  Grounds 1, 2, & 3 Are Procedurally Barred

#### 1.  Nassar's Claims In Grounds 1-3

In Ground 1, Nassar states "a person cannot [constitutionally] be convicted for both receipt and possession of the same items of child pornography," because "receipt of child pornography always requires proof of possession."  (R.64: Mot., PageID.516.)  He notes he was convicted of both receipt and possession of child pornography, and he received consecutive 20-year sentences for each conviction.  (*Id*.)  He concludes that his conviction for both crimes was therefore an "unconstitutional [violation of the] double jeopardy clause of the 5th amendment." (*Id*., PageID.508, 516.)  Although he never explicitly says so, implicit in his argument is the assertion that his convictions were based on "the same items of child pornography."

In Ground 2, Nassar claims the Court violated his First Amendment right to free speech by imposing as a condition of supervised release a prohibition against possessing or accessing "any computer or computer-related devices, other electronic communication, data storage devices, or media in any manner or for any reason."  (R.64: Mot., PageID.509, 516.)

In Ground 3, Nassar claims the Court violated his "1st Amendment rights" by imposing, as a condition of supervised release, restrictions on the places he may enter. (R.64: Mot., PageID.510, 518.)

#### 2.  These Claims Are Procedurally Barred

Nassar concedes he failed to raise Grounds 1, 2, or 3 on direct appeal.  (*Id*., PageID.508, 509, 511, 513.)  He states he did not do so "because they are grounds not appropriate in direct appeal" and because "court opinions and rulings have changed since the direct appeal providing new grounds to argue."  (*Id*., PageID.508, 510-11, 513.)  But Nassar neither cites any of these

allegedly new "court opinions and rulings" nor explains how they provide new, previously unavailable grounds to attack his sentence.

Nassar's conclusory claims fail to overcome procedural default. As noted above, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless a petitioner shows either 1) "cause" and "actual prejudice;" or 2) "actual innocence." *Massaro*, 538 U.S. at 504. Nassar has done neither.

First, Nassar has failed to show any "cause" for his procedural default. Instead, he has offered only conclusory claims about unidentified changes in "court opinions and rulings." Such conclusory claims are insufficient to meet his burden. *See Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) ("Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced."). Nor, for the reasons set forth in Section IV.B-C below, has he shown *Strickland* prejudice, let alone "actual prejudice."

Second, Nassar makes no claim of "actual innocence." Actual innocence means factual innocence, not mere legal insufficiency or legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Nassar does not contest his factual guilt. His double-jeopardy claim in Ground 1 is a legal claim, not a factual innocence claim. *See Robinson v. Mackie*, No. 2:11-CV-276, 2011 WL 6090805, at *5 (W.D. Mich. Dec. 6, 2011) (where "actual innocence" claim is based on legal arguments concerning the interpretation of the Double Jeopardy Clause, the actual-innocence argument fails); *Drummond v. United States*, 41 F.3d 664 (5th Cir. 1994) ("Nor does Drummond's argument that as a result of being tried on two counts of the indictment he was subjected to double jeopardy raise a question concerning his actual innocence."); *Selsor v. Kaisesr*, 22 F.3d 1029, 1034-35 (10th Cir. 1994) (rejecting petitioner's argument that his double jeopardy claim was one

of actual innocence; rather, it was merely a "legal innocence" claim). And his claims in Grounds 2-3, which merely challenge the imposition of certain conditions of supervised release, do not involve any assertions of actual innocence. Accordingly, his claims are procedurally barred.

### B. Nassar's Double-Jeopardy Claim Is Meritless

If the Court finds that Nassar's double-jeopardy claim (Ground 1) is not procedurally barred, it nevertheless fails on the merits.

### 1. Background

Count 1 of the Superseding Indictment charged Nassar with receipt and attempted receipt of child pornography. (R.16: SIND, PageID.86.) This count alleged that the offense conduct occurred between September 18, 2004 and December 1, 2004. (*Id.*) In the plea agreement, Nassar admitted that during this 10-week period, he downloaded images and videos from the Internet using a program called NewsRover. (R.23: Plea Agm't, PageID.105.) The Amended Presentence Report (PSR) notes that Nassar downloaded 63 files during this time, and "these downloads formed the basis for Count One." (R.46: PSR, PageID.363 ¶ 26.) These images were found on Nassar's AcomData hard drive. (*Id.*) Count 1 listed six specific files that had been downloaded during this time. (R.16: SIND, PageID.86.)

Count 2, in contrast, charged that Nassar possessed child pornography between February 6, 2003, and September 20, 2016. (R.16: SIND, PageID.87.) The Count listed 10 specific files that Nassar possessed, which were different from those listed in Count 1. (*Id.*) In contrast to the small number of files that formed the basis for Count 1, Nassar admitted in the plea agreement that the factual basis for Count 2 were "thousands of images and videos of child pornography" that he possessed "[b]etween 2003 and 2016." (R.23: Plea Agm't, PageID.105.) He admitted that he possessed these images not only on the AcomData hard drive, but also on "other devices." (*Id.*) The PSR noted that "[i]n addition to" the images that formed the basis for Count 1, the AcomData

hard drive contained over 35,000 other child pornography images or files.   (R.46: PSR, PageID.363-64, ¶¶ 27-30.)  The PSR further detailed the images and videos of child pornography that were found on a Toshiba hard drive, a Fujitsu hard drive, and an Acer laptop.  (*Id*, PageID.364-65, ¶¶ 31-33.)  This larger, broader, and separate collection of child pornography formed the basis for Count 2.

### 2.  Law

"The Double Jeopardy Clause 'protects against multiple punishments for the same offense.'"  *United States v. Gray*, 641 F. App'x 462, 465 (6th Cir. 2016) (citation omitted).  The Sixth Circuit has "held that convictions for both knowingly possessing child pornography and knowingly receiving the same child pornography constituted multiple punishments for the same conduct."  *Id. (citing United States v. Ehle*, 640 F.3d 689, 694–95 (6th Cir. 2011)).  "However, convictions for both receipt and possession of child pornography will stand if separate conduct underlies the two charges."  *Id*. (citation omitted.)  In evaluating a double-jeopardy claim in this context, courts can consider "different dates, different images, and different media as relevant considerations," both in the indictment and the factual record.  *Id*.

### 3.  Analysis

Nassar's double-jeopardy claim fails because he fails to show that his conviction for Count 1 (receipt and attempted receipt of child pornography) was based on "the same conduct" that formed the basis for his conviction for Count 2 (possession of child pornography).  Although Nassar never expressly says so, implicit in Ground 1 is the claim that he was convicted of receipt and possession "based on the same conduct."  But Nassar offers no facts or analysis showing why he believes this to be the case, nor does he cite to anything in the record that supports this conclusory, implicit claim.  In fact, he fails to cite or discuss the record at all.  He has thus waived the issue through his conclusory and perfunctory treatment.  *See Prince*, 78 F. App'x at 442; *Curry*,

39 F. App'x at 994; *see also Ruffin v. Cuyahoga Cty.*, 708 F. App'x 276, 278 (6th Cir. 2018) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."); *United States v. Keller*, 498 F.3d 316, 326 (6th Cir. 2007) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

In any event, the record shows that separate and distinct conduct formed the basis for each offense.   That record is summarized in the "Background" section above.   For starters, the possession count started in 2003, which necessarily preceded any images Nassar received between September 18 and December 1, 2004.  (R.16: SIND, PageID.86-87.)  Counts 1 and 2 listed separate images.  (*Id*.)  Count 1 was based on a relatively small number of images found on the Acom, whereas Count 2 was based on "thousands of images and videos of child pornography" found not only on the Acom, but also other devices.  (R.23: Plea Agm't, PageID.105.)  The Presentence Report spelled out in detail the distinct and separate transactions and images that formed the basis for each count.  (R.46: PSR, PageID.363-65, ¶¶ 26-33.)  As the Sixth Circuit has held, "convictions for both receipt and possession of child pornography will stand if separate conduct underlies the two charges."  *Gray*, 641 F. App'x at 465; *see also United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011) ("conviction under both statutes is permissible if separate conduct is found to underlie the two offenses").   That is the case here, and Nassar's double-jeopardy claim is meritless.[1]

---

[1]      Moreover, Nassar agreed to plead guilty to Counts 1, 2, and 3 of the Superseding Indictment in exchange for certain concessions from the United States as detailed in the written plea agreement.  (R.23: Plea Agm't, PageID.107-08; R.38: Plea Tr., PageID.228.)  In the unlikely event Nassar were to succeed in voiding his plea or conviction to either Count 1 or Count 2, that would breach the plea agreement, with all the attendant consequences laid out in the plea agreement.  (R.23: Plea Agm't, PageID.111-12.)

### C.   Nassar's Complaints About His Supervised-Release Conditions Are Meritless

In Grounds 2 and 3, Nassar claims the Court violated his First Amendment rights by imposing certain conditions of supervised release.  These claims are procedurally barred for the reason set forth in Section IV.A, above.  If the Court holds otherwise, these claims nevertheless fail on the merits.

### 1.   Background

The Court sentenced Nassar to 60 years in prison, followed by a lifetime-period of supervised release.  (R.48: Judgment, PageID.425-26.)   The Court imposed certain Special Conditions of Supervised Release, including the following:

> Special Condition 6:  You must have no contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate including, but not limited to, parks, schools, day care centers, theme parks, theaters, and playgrounds.

> Special Condition 9:  You must not access or possess any computer or computer-related devices, other electronic communication, data storage devices, or media in any manner or for any reason.

(*Id*., PageID.428.)

The Court imposed these special conditions after thoroughly and extensively discussing the constellation of factors that made Nassar so dangerous and his conduct so serious.  (R.58: Sent. Tr., PageID.476-84.)   The Court noted that Nassar's child-pornography activity, which he had committed with computers over two decades, was "like no other offense of this nature that I have reviewed."  (*Id*., PageID.477.)   Nassar himself noted at sentencing that he had been "battling with [child pornography] for a considerable period of time," and he suggested it was an addiction.  (*Id*., PageID.468.)   The Court further discussed the particularized need to deter Nassar and protect the public in this case.  (*Id*., PageID.481-82.)   The Court noted that Nassar fell into that category of offenders "who remove all doubt about the dangers they pose for acting out against children."  (*Id*., PageID.482.)   In addition to his voracious appetite for child pornography, he had sexually abused

15

"very vulnerable victims, hundreds if not thousands of times over a long time span." (*Id.*) The Court found that Nassar "was, is, and in my view will continue to be a real and present danger to children." (*Id.*) "[H]e should never again have access to children." (*Id.*, PageID.483.)

In addition to the detailed discussion of the risks on the record, the Presentence Report explained that the reason for Special Condition 6 was "to minimize third-party risks and reduce the probability of recidivism." (R.46: PSR, PageID.417, ¶ 349.) Similarly, Special Condition 9 was "based on the nature and circumstances of the instant offense and to reduce the probability of recidivism and address third-party risks." (*Id.* ¶ 352.)

The Court provided Nassar with a copy of these Special Conditions before sentencing, and he signed them, agreeing that he had reviewed and understood them. (R.50: Order, PageID.436-37.) The defense did not object to these special conditions. (R.58: Sent. Tr., PageID.486.)

## 2. Law

Courts have "broad discretion to impose appropriate conditions of supervised release." *United States v. Ritter*, 118 F.3d 502, 506 (6th Cir. 1997). "[W]here a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld.'" *Id.* at 504 (citation omitted). Federal statute provides that special conditions of supervised release must be "reasonably related to" certain statutory factors and involve "no greater deprivation of liberty than is reasonably necessary" to deter, protect the public, and rehabilitate the defendant. 18 U.S.C. § 3583(d)(1-2). Such conditions must also be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3.)

"Supervisory conditions that implicate fundamental rights such as freedom of speech and freedom of association are subject to careful review, but if primarily designed to meet the ends of

rehabilitation and protection of the public, they are generally upheld." *Ritter*, 118 F.3d at 504 (citations omitted).

In general, a court must "adequately state[] in open court at the time of sentencing 'its rationale for mandating special conditions of supervised release.'" *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007) (citation omitted).  However, "a sentencing court's failure to expressly explain its reasons for exacting a particular special condition of supervised release will be deemed harmless error if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety.'" *Id.* (citation omitted).

### 3.  Analysis

In Ground 2, Nassar claims the Court violated his First Amendment right to free speech by imposing Special Condition 9.  Specifically, he claims that "cyberspace" is "the most important place[] for the exchange of views" because it offers "various websites to engage in a wide array of protected first amendment activity."  (R.64: Mot., PageID.516.)  He claims the lifetime ban contained in Special Condition 9 is "draconian and deprives [him] of more liberty than is reasonably necessary to deter crime, protect the public, and rehabilitate [him]." (*Id.*, PageID.516-17.)  He states the Court's analysis must be fact-specific, and any condition must be no broader than necessary. (*Id.*)  He claims the lifetime ban is "presumptively excessive" because it "sweep[s] too broadly" and is not "narrowly tailored." (*Id.*, PageID.517.)  He claims the ban impermissibly suppresses lawful speech.  (*Id.*)  He also claims the ban would prohibit him from performing "simple basic everyday tasks," using common devices, and even watching TV. (*Id.*)  He claims monitoring software would be a better option, and "a lifetime ban as stated is excessive." (*Id.*, PageID.517-18.)

In Ground 3, Nassar claims the Court violated his First Amendment rights by imposing, Special Condition 6.  (R.64: Mot., PageID.510, 518.)  Specifically, he claims that "a lifetime ban on having no [sic] contact with minors without written approval of the probation officer and being banned from entering into any area where children frequently congregate . . . deprives [him] of more liberty than is reasonably necessary to deter crime, protect the public, and rehabilitate [him]." (*Id.*)  He states the Court's analysis must be fact-specific, and any condition must be no broader than necessary.  (*Id.*)  He claims Special Condition 6 "sweeps too broadly," and the lifetime duration of the ban is "excessive."  (*Id.*)

The Court did not violate Nassar's First Amendment rights by imposing these conditions. Instead, it crafted these conditions to address the very real risks and dangers posed by Nassar's unique history and characteristics.  As for Special Condition 9, the computer condition, the Court articulated the concerns that made this broad prohibition appropriate and necessary.  Nassar had amassed an enormous collection of child pornography, in excess of 37,000 files, that was unlike anything the Court had seen.  His conduct was spread across multiple devices and spanned two decades.  He had started down the path to making his own videos, and he had destroyed evidence that undoubtedly contained still more child pornography.  He himself acknowledged the long duration of the conduct, that he had hidden it, and that it was like an addiction.  On top of that, he had "sexually abused scores of children," and even at sentencing, he offered the Court only transparent rationalizations that failed to recognize his root problem – his insatiable appetite for sexual gratification at the expense of children.  (R.58: Sent. Tr., PageID.479-81.)  Given these factors, Special Condition 9 was "reasonably related to the [relevant § 3553(a)] factors" – particularly the need to protect the public – and "involve[d] no greater deprivation of liberty than [was] reasonably necessary."  18 U.S.C. § 3583(d).  Thus, even if it implicated fundamental rights,

it was nevertheless permissible and appropriate because it was "designed to meet the ends of rehabilitation and protection of the public." *Ritter*, 118 F.3d at 504. Courts have upheld other, similarly broad restrictions that were tailored to address the unique factors of an individual defendant's case. *See, e.g., United States v. Lantz*, 443 F. A'ppx 135, 144 (6th Cir. 2011) (affirming, on plain error review, a computer and internet ban); *United States v. Paul*, 274 F.3d 155, 170 (5th Cir. 2001) (absolute ban on computer and internet use acceptable if reasonably necessary to serve the statutory goals set forth in § 3583(d)). Furthermore, if Nassar is ever released, and if conditions have so changed that Special Condition 9 is then "obsolete," Nassar can always move the Court for a modification at that time.[2]

As for Special Condition 6, which relates to contact with minors and entering into areas where children frequently congregate, that condition too is narrowly and appropriately tailored to protect the public and deter Nassar. Nassar preyed on and sexually assaulted scores of "helpless children" for decades. (R.58: Sent. Tr., PageID.477-82.) He sexually abused children who trusted him as a doctor; he abused children who trusted him as a friend. (*Id*.) His conduct spanned decades. (R.46: PSR: PageID.367-408.) As the Court rightly observed, Nassar "was, is, and in my view will continue to be a real and present danger to children." (R.58: Sent. Tr., PageID.482.) The restrictions contained in Special Condition 6 are necessary and appropriate to protect and deter. They also "involve[] no greater deprivation of liberty than [was] reasonably necessary" to account for Nassar's history and characteristics. *See* 18 U.S.C. § 3583(d). Courts have upheld other, similar restrictions imposed to address the unique factors of an individual defendant's case.

---

[2] As a practical matter, Nasser is never going to be released from federal prison, and his arguments about supervised release are academic, at best. Nassar is 56 years old and just a few years into a 60-year sentence. He is serving an effective life sentence. And even if he were to live well past 100 and be released from *federal* prison, he has yet a long state sentence to be served. Practically speaking, he cannot reasonably expect to ever be on supervised release.

*See, e.g., United States v. Trepanier*, 576 F. App'x 531, 538 (6th Cir. 2014) ("the bans on loitering where minors congregate . . . are reasonably related to preventing Trepanier from reoffending and to protecting the public"); *United States v. Shultz*, 733 F.3d 616, 622 (6th Cir. 2013) (affirming condition prohibiting association with children without first obtaining the probation officer's approval); *United States v. Frazier*, 547 F. App'x 729, 733 (6th Cir. 2013) (upholding no-loitering provision where defendant was convicted of child pornography offenses); *United States v. Lewis*, 565 F. App'x 490, 497 (6th Cir. 2012) (affirming no-contact-with-children and no-loitering conditions for defendant convicted of SORNA violation).

### D. Nassar's Ineffective-Assistance-Of-Counsel Claims Are Meritless

In Ground 4, Nassar raises two ineffective-assistance-of-counsel claims.  (R.64: Mot., PageID.512, 519.)  Although both are styled as failure-to-object claims, they are, at bottom, claims that the Court (1) "erred in assessing criminal history points for [Nassar's] state conviction[s]," and (2) "failed to consider USSG § 5G1.3(c) when it required [Nassar] to serve his sentence consecutive to his state sentences."  (*Id.*)  Nassar appears to have styled these claims as ineffective-assistance claims to avoid the prohibition against litigating non-constitutional guideline issues in Section 2255 motions.  *See Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) ("[A] non-constitutional challenge to [an] advisory guidelines range suffers from a greater defect: it is not cognizable under § 2255.").  In any event, Nassar raised the very same issues on appeal, and the Sixth Circuit rejected them on plain-error review.  Nassar now claims his attorney's failure to object before this Court prejudiced him by causing his "direct appeal to fail."  (*Id.*)  These claims are meritless.

#### 1. Claim Based On Criminal History Points

Nassar first claims his attorneys were ineffective for failing to object to the Court's calculation of his criminal history score.  (R.64: Mot., PageID.519.)  He claims the Court "erred

in assessing criminal history points for [his] state conviction[s] because those convictions were included in the relevant conduct used to calculate the offense level." (*Id*.)  Nassar claims his attorneys should have objected, but he does not explain *why* he believes the Court erred, nor does he cite any authority to support his claim.  Nassar has thus waived this claim.  See *Ruffin*, 708 F. App'x at 278 ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."); *Keller*, 498 F.3d 316, 326 (6th Cir. 2007) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").  But even if Nassar has not waived this claim, he has failed to show either deficient performance or prejudice.

### a.  Background

The Court calculated Nassar's base offense level by applying U.S.S.G. § 2G2.2.  (R.58: Sent. Tr., PageID.463-65; R.46: PSR, PageID.401, ¶ 238.)  The Court then applied a number of enhancements to the base offense level, yielding an adjusted offense level of 44.  (R.46: PSR, PageID.402-03, ¶¶ 239-247, 254.)  After receiving credit for acceptance of responsibility, Nassar's total offense level was 41.  (*Id*., PageID.403, ¶ 239; R.58: Sent. Tr., PageID.465.)  Nassar does not quarrel with the accuracy or propriety of these calculations.

One of the enhancements the Court applied was a five-point enhancement pursuant to U.S.S.G. § 2G2.2(b)(5), because Nassar engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.  (R.46: PSR, PageID.402, ¶ 241.)  Specifically, as detailed in the Presentence Report, this enhancement was based on Nassar's sexual assaults against, and sexual exploitation of, 40 children over the course of approximately 20 years.  (*Id*., PageID.367-97, ¶¶ 42-223.)  Nine of these children were also victims in two state cases charging Nassar with Criminal Sexual Conduct, and Nassar had pled guilty to these state charges shortly before sentencing in his federal case.  (*Id*., Page ID.368, 371-80, ¶¶ 47, 69, 73, 77, 86, 93, 107, 113, 119.)  Nassar stipulated to the applicability of this enhancement as part of his plea agreement. (R.23: Plea Agm't,

PageID.109.)  In his Section 2255 motion, he does not contest the applicability of the enhancement. (R.64: Mot., PageID.519.)

After calculating Nassar's total offense level, the Court determined that he fell in criminal history category II.   (R.58: Sent. Tr., PageID.464-65.)   The Court expressly stated that its calculations were the same as those in the Amended Presentence Report.  (*Id*., PageID.465.)  In accordance with U.S.S.G. § 4A1.2(a)(4), that Report assessed Nassar one point for each of his two state-court convictions, because he had pled guilty to these offenses but had not yet been sentenced. (R.46: PSR, PageID.408-09, ¶¶ 287-88.)  Nassar therefore had two criminal-history points, placing him in criminal history category II.  (*Id*., PageID.409, ¶ 289.)

After explaining its calculations, the district court asked Nassar's lawyer whether he was in agreement with the accuracy of the court's guideline calculations; counsel responded, "We are in agreement, your honor."  (R.58: Sent. Tr., PageID.465.)

### b.   Law

When calculating a defendant's criminal history category, a court ordinarily may not consider previous sentences for conduct that qualifies as relevant conduct.  *See* U.S.S.G. § 4A1.2(a)(1) and accompanying commentary.  But "application note [5] to § 2G2.2 carves out an exception to the general rule."  *United States v. Nance*, 611 F.3d 409, 414 (7th Cir. 2010). That note expressly provides that a conviction "taken into account under subsection (b)(5) is not excluded from . . . receiv[ing] criminal history points under Chapter Four, Part A (Criminal History)."  U.S.S.G. § 2G2.2, cmt. n.5.

Section 4A1.2 provides, in pertinent part, that if "a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) . . . ."  U.S.S.G. § 4A1.2(a)(4).  The same section defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea [or

otherwise], for conduct not part of the instant offense." *Id*. at § 4A1.2(a)(1). The commentary explains that conduct is "part of the instant offense" if it is relevant conduct as defined in § 1B1.3. *Id*. at § 4A1.2, cmt. n. 1.

In most cases, "relevant conduct" is limited to conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). But as the Sixth Circuit recently explained, the scope of "relevant conduct" for purposes of applying § 2G2.2(b)(5) "is broader than the scope of relevant conduct typically considered under U.S.S.G. § 1B1.3," and includes past sexual abuse of minors, regardless of whether that abuse is linked to the underlying offense. *United States v. Ladeau*, 688 F. App'x 342, 350 (6th Cir. 2017); *accord United States v. McGarity*, 669 F.3d 1218, 1259 (11th Cir. 2012); *United States v. Bacon*, 646 F.3d 218, 221 (5th Cir. 2011); *United States v. Sundsmo*, 540 F. App'x 757, 758 (9th Cir. 2013); *Nance*, 611 F.3d at 413.

Section 2G2.2, of course, applies to cases involving the receipt and possession of child pornography, and subsection (b)(5), known as the "pattern enhancement," provides for a five-level increase if a "defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2. A "[p]attern of activity involving the sexual abuse or exploitation of a minor" is defined as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." *Id*. at cmt. n.1.

Application Note 5 provides that "[a] conviction taken into account under subsection (b)(5) is not excluded from consideration of whether that conviction receives criminal history points

pursuant to Chapter Four, Part A (Criminal History)."   *Id.* at cmt. n.5. "Based on its plain language," this note "carves out an exception to the general rule that relevant conduct is not factored in a defendant's criminal history score."   *Nance*, 611 F.3d at 414.

### c.   Analysis

#### i.   Nassar's Attorneys Did Not Render Ineffective Assistance

The Court correctly calculated Nassar's criminal history category, properly assigning one criminal-history point to each of Nassar's two state-court convictions.  Nassar's attorneys did not, therefore, render deficient performance for failing to raise a meritless objection to the contrary. But even if the Court did err, which it did not, Nassar still fails to establish ineffective assistance.

Nassar does not dispute that the Court properly assessed five points pursuant to U.S.S.G. § 2G2.2(b)(5), because he "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."  As discussed above, this enhancement was based on Nassar's sexual assaults on 40 children, only nine of whom were also victims in two state-court cases to which Nassar pled guilty shortly before his sentencing in this case.

The Court also properly assessed Nassar criminal history points based on his guilty pleas in these state cases.  *See* U.S.S.G. § 4A1.2(a)(4).  Although a district court is usually precluded from assessing criminal history points for conduct that is part of "the instant offense," there is an exception to this general rule for conduct that is part of "the instant offense" because it is "pattern" activity within the meaning of § 2G2.2(b)(5).  The commentary to Section 2G2.2 explicitly states "[a] conviction taken into account under subsection (b)(5) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)."  U.S.S.G. § 2G2.2, cmt. n. 5.  The United States brought this application note to the Court's attention in its sentencing memorandum.  (R.44: U.S. Sent. Mem., PageID.333 n.3.)  And

guidelines commentary is binding "if the guideline which the commentary interprets will bear the construction." *Stinson v. United States*, 508 U.S. 36, 46 (1993).

Nassar ignores this authoritative guideline commentary. He focuses instead on the fact that his state-court "convictions were included in the relevant conduct used to calculate [his] offense level." (R.64: Mot., PageID.519.) But his claim fails because the plain language of the guidelines establishes an exception to the general rule, and that exception applies in this case.

Numerous courts, including the Seventh, Ninth, and Tenth Circuits, have reached the same conclusion. In *United States v. Nance*, 611 F.3d 409 (7th Cir. 2010), the district court found that one of Nance's past convictions "was relevant conduct and justified a § 2G2.2(b)(5) enhancement." *Id*. at 413. The court also assessed Nance three criminal history points for the same conviction. *Id*. at 412. Like Nassar, Nance claimed that the district court should not have assessed criminal history points for conduct that was "relevant conduct to his offense of conviction." *Id*. at 412. Like Nassar, he relied on the general rule providing that "relevant conduct ordinarily is not considered in calculating a defendant's criminal history score." *Id*. at 413. The Seventh Circuit rejected his claim, holding that the commentary to Section 2G2.2 carved out an exception to the general rule for "conviction[s] taken into account under subsection (b)(5)." *Id*. at 414. The court noted that this conclusion was consistent with a previous Seventh Circuit holding, which recognized this application note as "an exception to the usual proscription against double counting." *Id*. (citing *United States v. McCaffrey*, 437 F.3d 684, 686 (7th Cir. 2006)). The *Nance* court also observed that its holding was consistent with a Tenth Circuit case, which recognized that the application note "'expressly allow[s] this kind of double counting.'" *Id*. (quoting *United*

*States v. Groves*, 369 F.3d 1178, 1187-88 (10th Cir. 2004)).[3]  The Ninth Circuit has reached the same conclusion in an unpublished opinion.  *See United States v. Astore*, 50 F. App'x 868, 869 (9th Cir. 2002) (holding no impermissible double-counting occurred because Section 2G2.2's application note "specifically provides that '[p]rior convictions taken into account under [the pattern of activity enhancement] are also counted for purposes of determining criminal history points.'").[4]  *See also United States v. Heddings*, No. CR 06-76-GF-DWM, 2016 WL 6901256, at *6 (D. Mont. Nov. 22, 2016) (relying on what-is-now Application Note 5 (it was then Application Note 3) to reject Heddings' criminal-history-category claim).

In affirming this Court's judgment, the Sixth Circuit observed that "[t]he plain language of Application Note 5 supports a conclusion that a prior conviction can be used to increase both the defendant's offense level under § 2G2.2(b)(5) and his criminal history score."  (R.60: 6th Cir. Order, PageID.495.)  But the Sixth Circuit also noted in dicta that "the Sentencing Commission's commentary in adopting Amendment 537 suggests that § 4A1.2(a)(1)'s bar on assigning criminal history points to convictions that are included in the defendant's relevant conduct still applies." (*Id*., PageID.495-96.)  The panel pointed to the following language from Amendment 537 to support its dicta:  "'[T]he amendment clarifies that prior convictions counted as part of the 'pattern

---

[3]    Although *Nance* did not note it, the Seventh Circuit had reached the same conclusion in a 2005 unpublished opinion.  *See United States v. Ohlinger*, 141 F. App'x 470, 472 (7th Cir. 2005) (rejecting defendant's double-counting claim because the guideline commentary provided that "[p]rior convictions taken into account under [what is now subsection (b)(5)] are also counted for purposes of determining criminal history points").

[4]    The Eleventh Circuit took a slightly different approach to reach the same conclusion in *United States v. Charniak*, 607 F. App'x 936, 939 (11th Cir. 2015).  There, the court concluded that the conduct that triggered the pattern enhancement was not "relevant conduct" under the traditional definition of that term, even though it was included in the "Offense Conduct" portion of the PSR.  *Id*.  Relying on the application note, the court concluded that "[t]he use of Charniak's state offenses to apply this five-level increase does not preclude the district court from considering the offense when calculating his criminal history points."  *Id.*

of activity' also may be counted as part of the defendant's criminal history under Chapter Four, if those convictions meet the criteria set forth in the relevant guidelines of that chapter."  *Id.* (citing U.S. Sentencing Guidelines Manual App. C, amend. 537 (U.S. Sentencing Comm'n 1996)).

The panel's dicta is unpersuasive for four reasons.  First, as the Sixth Circuit acknowledged, the "plain language" of Application Note 5 states "that a prior conviction can be used to increase both the defendant's offense level under § 2G2.2(b)(5) and his criminal history score."  (R.60: 6th Cir. Order, PageID.495.)  Where the plain language of the commentary is clear, the Court should look no further.  *See Nance*, 611 F.3d at 414-15 (rejecting restrictive reading of the commentary because it ran "counter to the plan language of the note"); *see also Keen v. Helson*, 930 F.3d 799, 805 (6th Cir. 2019) ("when, as here, the text is clear, that is the end of the matter. Ancillary persuasive authority is irrelevant").

Second, the dicta is inconsistent with the holding of every court to have considered the issue, as discussed above.[5]

Third, construing Application Note 5 to mean that a prior conviction qualifies for criminal history points only if it would ordinarily qualify under Chapter 4 would render Application Note 5 meaningless.  If that is all it means, there would have been no need for Application Note 5 in the first place; Chapter 4 and its accompanying commentary would tell us all we need to know.  But we know that is not the case.  The Tenth Circuit has observed that the very point of amendment was to alter the previously controlling framework imposed by Chapter 4 and its "accompanying commentary," under which rule "convictions that had already been considered as relevant conduct under [the pattern enhancement] could not have been used to calculate the defendant's criminal history," to now "expressly allow[ ] this kind of double counting."  *Groves*, 369 F.3d at 1188.  The

---

[5]    Nassar has not cited, and the undersigned could not find, any cases to the contrary.

panel's dicta would nullify both the purpose and text of the Application Note; courts should avoid such nullifying constructions. *See United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011) ("In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply."); *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011) (explaining that courts must not "interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous").[6]

Fourth, the clause from Amendment 537 the panel pointed to – "if those convictions meet the criteria set forth in the relevant guidelines of that chapter" – simply means that Chapter 4's other scoring restrictions, such as time limitations, still apply. *Cf. Nance*, 611 F.3d at 415 (noting that "Part A to Chapter Four has many other conditions [aside from the double-counting bar that was eliminated by Application Note 5] that must [still] be satisfied in order for a 'prior sentence' to count as criminal history").

For all these reasons, the Court properly assessed Nassar two criminal history points. The Court did not err, and Nassar has therefore failed to show that his lawyers rendered constitutionally ineffective assistance by failing to raise a meritless objection. *See Ryal v. Lafler*, 508 F. App'x 516, 520 (6th Cir. 2012) (counsel was not ineffective for failing to make meritless objections); *Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008) ("Trial counsel was not ineffective for failing to file a motion to suppress that would have been meritless."); *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998) ("Appointed counsel cannot be deemed ineffective for failing to raise frivolous claims.").

---

[6]     Nor is this a case where the guideline commentary adds to a list or definition articulated in the guideline text.  Rather, the commentary to Section 2G2.2 simply modifies or clarifies, for certain purposes, the definitions provided in the commentary to this and other sections.

Furthermore, even if the Sixth Circuit (or this Court) were to eventually conclude that Application Note 5 does not permit double counting, Nassar has still failed to establish ineffective assistance.  A court is to assess an attorney's performance based on his or her "perspective at the time," in light of the circumstances then existing, rather than "in the harsh light of hindsight."  *See Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (citations omitted).  Under this standard, Nassar cannot establish constitutionally deficient performance.  As the Sixth Circuit observed, the "plain language of Application Note 5" permits double counting. (R.60: 6th Cir. Order, PageID.495.)  And at the time of Nassar's sentencing -- and even today -- every court that has decided the issue has concluded that Application Note 5 means exactly what its plain language says.  Given this background, the Constitution did not require counsel to object based on a speculative prediction that in the future, some other court might possibly reach a different conclusion.  *See Snider*, 908 F.3d at 192 ("We have repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions."); *id*. ("trial counsel was not ineffective for failing to foresee that this court would subsequently shift gears years later"); *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004) ("[t]he Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant.").

### ii.   Nassar Fails to Establish Prejudice

Nassar claims his attorney's failure to object before this Court prejudiced him by causing his "direct appeal to fail." (*Id*.)  He does not explain how this is the case.  When it comes to prejudice, however, the question is whether "there is a reasonable probability that, but for the [allegedly] unprofessional errors, the outcome of the proceeding [before this Court] would have been different." *Strickland*, 466 U.S. at 694.  Nassar fails to show any prejudice for two, independently sufficient reasons.

First, Nassar fails to establish prejudice because the Court properly calculated his criminal history score, and therefore any objection asserting the contrary would not have changed the outcome of the proceeding.  Second, even if the Court erred in calculating his criminal history score – which it did not – there is no reasonable likelihood *in this case* that a timely objection would have altered the outcome.  On the contrary, the record shows that the Court would have imposed a maximum sentence in any event.  The Court stressed that the two main factors driving Nassar's sentence were the need to deter Nassar and protect the public.  (R.58: Sent. Tr., PageID.481-82.)  After carefully considering the Section 3553(a) factors, including, as a starting point, the guidelines, the Court concluded there was "no question in my mind that the maximum potential penalties are in order here."  (*Id.*, PageID.483.)  The Court noted that Nassar had "consumed enormous amounts of child pornography and at the same time acted out on very real, very vulnerable victims, hundreds if not thousands of times over a long time span."  (*Id.*, PageID.482.)  He had "remove[ed] all doubt about the dangers [he] pose[d] for acting out against children."  (*Id.*)  The Court found that Nassar "was, is, and in my view will continue to be a real and present danger to children."  (*Id.*)  For that reason, the Court found it "imperative that [he] be deterred for as long as possible," and the Court further found there was a need to deter him "*for the rest of his life*."  (*Id.*, PageID.482-83 (emphasis added).)  The Court found that Nassar "has demonstrated that he should never again have access to children."  (*Id.*, PageID.482.)

The Court made an unambiguous record that it considered a sentence at the combined statutory maximum necessary to achieve the § 3553(a) factors.  The Court spoke in no uncertain terms: "no question in my mind that the maximum potential penalties are in order"; Nassar will always be a threat to children, and there is need to deter him "for the rest of his life"; and "he should never again have access to children."  Moreover, the United States had, in an abundance of

caution, moved for an upward departure or variance in the event the Court calculated Nassar's guideline range to be something less than 360-720 months.  (R.43: Departure Mot., PageID.323.) Thus, even if Nassar's advisory guideline range were lower, there is no reasonable probability *on this record* the Court would have imposed a lesser sentence.

It is true that the Supreme Court recently held that "[i]n most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome."  *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).  But it is also true that the Supreme Court recognized that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist."  *Id*.  Courts must therefore "consider the facts and circumstances of the case before it" to make a determination.  *Id*.  If the record is "clear that the judge based the sentence [she] selected on factors independent of the Guidelines," that is enough. *Id*. at 1347.  The Sixth Circuit has repeatedly recognized and applied this rule.  *See, e.g.*, *United States v. McCall*, 699 F. App'x 452, 456–57 (6th Cir. 2017) ("the court gave McCall a life sentence based on a detailed explanation of factors independent of the advisory Guidelines range"); *United States v. Morrison*, 852 F.3d 488, 492 (6th Cir. 2017).

As discussed above, the record here is "clear that the judge based the sentence [she] selected on factors independent of the Guidelines" – specifically the need to deter Nassar and protect the public.  (R.58 Sent. Tr., PageID.481-82.)  Accordingly, Nassar has failed to show that even if there were any error, there is a reasonable likelihood of a different outcome.

### 2.  Claim Based on Consecutive Sentences

Nassar next claims his attorneys were ineffective because "they failed to object to the adequacy of the Court's explanation for imposing consecutive sentences."  (R.64: Mot., PageID.519.)  He claims his sentence is "procedurally unreasonable because the District Court

failed to consider USSG § 5G1.3(c) when it required [Nassar] to serve his sentence consecutive to his state sentences." (*Id*.) He asks how the Court could have ordered this when he "had not been sentenced yet in the state." (*Id*.) He claims he asked his attorneys to object, but he claims they objected improperly. (*Id*.) Specifically, he acknowledges they objected to the Court's *substantive* decision to impose his federal sentence consecutive to his state sentences, but he claims they should have raised a *procedural* objection "to the adequacy of the Court's explanation." (*Id*.) Nassar's claim is meritless, as he has failed to show either deficient performance or prejudice.

### a. Background

As discussed above, the Court applied a "pattern enhancement" based on Nassar's sexual assaults against 40 children over the course of 20 years. Nine of these 40 victims were victims in two state-court cases in which Nassar pled guilty shortly before his federal sentencing. Nassar's assaults against these nine victims qualified as "relevant conduct" only because the scope of "relevant conduct" for purposes of applying § 2G2.2(b)(5) "is broader than the scope of relevant conduct typically considered under U.S.S.G. § 1B1.3." *Ladeau*, 688 F. App'x at 350.

Presumably because it had included the conduct underlying the state-court convictions within the broader-than-usual scope of "relevant conduct" for purposes of applying § 2G2.2(b)(5), the Amended Presentence Report noted, "[p]ursuant to U.S.S.G. § 5G1.3(c), the sentence for the instant offense shall be imposed to run concurrently to the anticipated state terms of imprisonment [in the two state cases]." (R.46: PSR, PageID.366, 416, ¶¶ 41, 339.)

In its sentencing memorandum, the United States emphasized the Court's "discretion to order [Nassar's] federal sentence to run consecutive to or concurrently with his anticipated state-court sentence." (R.44: U.S. Sent. Mem., PageID.338-39.) The United States cited and discussed *United States v.* Murphy, 591 F. App'x 377 (6th Cir. 2014), *Setser v. United States*, 566 U.S. 231 (2012), and U.S.S.G. § 5G1.3(c). *Id*. The United States noted the Court's "discretion regarding

how [Nassar's federal] sentence should relate to the anticipated state court sentences."  (*Id.*, PageID.339.)  In his sentencing memorandum, Nassar cited Section 5G1.3 and noted that the Court could depart or vary from the sentencing guidelines.  (R.45: Def. Sent. Mem., PageID.345-46.)

Against this backdrop, the Court stated, in determining how to impose sentence, "Nassar was, is, and in my view will continue to be a real and present danger to children. And it is *through consecutive sentencing* that I can take into account the need to deter this man from harming innocent girls and young women for the rest of his life."  (R.58: Sent. Tr., PageID.482-83 (emphasis added).)  In implementing its stated intention, the Court imposed sentences on Counts 1-3 that were consecutive not only to one another, but also to the anticipated sentences in the two state-court cases.  (*Id.*, PageID.483-84.)  The Court agreed it was doing so "because of the nature and scope and totality of the defendant's conduct; that it is not limited to Michigan and for all the other factors the Court has already articulated."  (*Id.*, PageID.485-86.)

The Court then asked defense counsel whether there was "any reason why sentence should not be imposed as I've indicated."  (*Id.*, PageID.486.)  Counsel responded, "we would just object to the consecutive sentencing to the state courts.  But we will leave that to Mr. Nassar to address at a later period."  (*Id.*)

### b.  Law

"District courts have discretion to order a defendant to serve his federal sentence consecutively with an anticipated state sentence."  *United States v. Murphy*, 591 F. App'x 377, 385 (6th Cir. 2014) (*citing Setser v. United States*, 566 U.S. 231 (2012); *see also* 18 U.S.C. § 3584. This is true even when "the anticipated state sentence [is] unknown at the time of his federal sentencing."  *United States v. Stoutermire*, 516 F. App'x 583, 587 (6th Cir. 2013).

"When imposing consecutive sentences, district courts must 'indicate on the record [their] rationale, either expressly or by reference to a discussion of relevant considerations contained

elsewhere.'" *Murphy*, 591 F. App'x at 385 (citation omitted). This requirement "is not exceedingly exacting," and a court "may incorporate by reference a discussion of the relevant considerations." *Id*. at 386. A district court need only make generally "clear its rationale for imposing consecutive sentences." *Id*.

Section 5G1.3(c) provides that if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." U.S.S.G. § 5G1.3(c). The guidance provided in this section is merely advisory, and courts are "entitled to [disregard it,] in order to achieve the sentencing goals listed in 18 U.S.C. § 3553(a)." *United States v. Gordon*, 496 F. App'x 579, 584 (6th Cir. 2012) (*citing Kimbrough v. United States*, 552 U.S. 85, 101–02 (2007); *United States v. Booker*, 543 U.S. 220 (2005)); *see also United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) (noting that a similar policy statement regarding consecutive sentences "is not binding on the district court, and construing it to be mandatory would be reversible error").

Finally, even in cases in which § 5G1.3(c) applies, a district court need not directly or explicitly mention the provision at sentencing; it is enough that the record reflects that the court considered the provision and adequately explained its decision to impose a consecutive sentence. *United States v. Hall*, 632 F.3d 331, 336 (6th Cir. 2011); *United States v. Brown*, 519 F. App'x 357, 358 (6th Cir. 2013); *United States v. Hartman*, 426 F. App'x 395, 400 (6th Cir. 2011).

### c. Analysis

#### i. Nassar's Attorneys Did Not Render Ineffective Assistance

The Court amply explained its rationale for imposing Nassar's federal sentence consecutively to his yet-to-be-imposed state sentences. That is all the law requires. Thus, there

34

was no procedural error to which counsel could have objected, and failure to raise a meritless objection is not constitutionally ineffective assistance.

The Court explained that three of the Section 3553(a) factors "stand out in this case: punishment . . . [b]ut more important in my view is deterrence and protection of the public." (R.58: Sent. Tr., PageID.481.)  The Court explained that it deemed consecutive sentencing necessary to produce "a sentence that is sufficient but not greater than necessary to achieve statutory goals." (*Id*., PageID.482.)  The Court stressed that Nassar was, and would continue to be, "a real and present danger to children," and therefore it was necessary to incapacitate him "for the rest of his life." (*Id*., PageID.482-83.)  The Court explained its decision to impose Nassar's federal sentence consecutively to his state sentences, agreeing its decision was driven by "the nature and scope and totality of the defendant's conduct; that it is not limited to Michigan and for all other factors the Court has already articulated." (*Id*., PageID.485-86.)  As was true in *Murphy*, the Court here "generally made clear its rationale for imposing consecutive sentences, which was 'all the court was required to do.'"  591 F. App'x at 386.

In affirming Nassar's sentence, the Sixth Circuit noted that this Court had articulated its "reasons for imposing consecutive sentences [, which] were consistent with § 3584." (R.60: Order, PageID.497.)  Specifically, the Sixth Circuit noted that this Court had "relied on the duration, enormity, and gravity of Nassar's criminal conduct; the serious harm that Nassar inflicted on his victims; and the serious safety threat that Nassar presents to the public." (*Id*.) The Court "found that Nassar was not similarly situated to other defendants given the scope of his criminal conduct," and it agreed "that at least some of Nassar's activities occurred outside of the State of Michigan, and thus at least implicitly recognized that Nassar's state sentences for first-degree criminal sexual conduct would not account for all of his criminal behavior." (*Id*.)

Nassar nevertheless insists "his sentence was procedurally unreasonable because the district court failed to consider USSG § 5G1.3(c)." (R.64: Mot. PageID.519.) Nassar raised the same issue on appeal, and it fails now for the same reasons it failed then.

First, the Court was not required to consider Section 5G1.3(c) because that section was, by its own terms, inapplicable. Section 5G1.3(c) only applies where "a state term of imprisonment is anticipated to result from another offense that is relevant conduct . . . under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct)." U.S.S.G. § 5G1.3(c). Nassar reasons that, because the conduct underlying his state-court cases was "relevant conduct" for purposes of Section 2G2.2(b)(5), Section 5G1.3(c) necessarily applies. But he is incorrect.

Section 5G1.3(c) does not apply to all relevant conduct, but only to relevant conduct that qualifies "under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct)." *See* U.S.S.G. § 5G1.3(c). This proviso is significant because, as discussed above, the scope of "relevant conduct" for purposes of applying Section 2G2.2(b)(5) "is broader than the scope of relevant conduct typically considered under U.S.S.G. § 1B1.3," and includes past sexual abuse of minors, regardless of whether that abuse is linked to the underlying offense. *Ladeau*, 688 F. App'x at 350; *Nance*, 611 F.3d at 413. Thus, "relevant conduct" for purposes of applying Section 2G2.2(b)(5) may include – and in Nassar's case did include – conduct that would not ordinarily qualify as "relevant conduct" under the terms of Section 1B1.3(a)(1-3). *See Ladeau*, 688 F. App'x at 350.

Nassar makes no claim that the conduct underlying his state-court cases qualifies as relevant conduct "under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3." *See* U.S.S.G. § 5G1.3(c). He has thus failed to show that Section 5G1.3(c) applied at all in this case, and he has therefore failed to show any procedural error. *Cf. United States v. Gomes*, 279 F. App'x

861, 873 (11th Cir. 2008) (although "Gomes's prior state court conviction was the basis for a five-level [pattern enhancement] pursuant to U.S.S.G. § 2G2.2(b)(5) . . . it did not constitute 'relevant conduct' for his present offense within the meaning of U.S.S.G. § 5G1.3(b)" because it did not qualify "under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3").

Second, even if Section 5G1.3(c) applied, the record shows the Court was aware of the provision and made a careful, considered determination that consecutive sentences were "necessary to achieve statutory goals." (R.58: Sent. Tr., PageID.482.) As discussed above, the Amended Presentence Report and the parties' sentencing memoranda discussed the provision. The United States emphasized the Court's discretion to impose either a consecutive or a concurrent sentence. (R.44: U.S. Sent. Mem., PageID.338-39.) And the Court carefully explained its rationale on the record. Nothing more was required.

In affirming Nassar's conviction on plain-error review, the Sixth Circuit held that this Court was "not required to specifically reference § 5G1.3;" rather, it needed only to "make 'generally clear' its rationale for imposing consecutive sentences and achieving an appropriate incremental penalty." (R.60: Order, PageID.496-97.) This holding is consistent with well-settled case law in this Circuit and others, and it defeats Nassar's claim. *See Brown*, 519 F. App'x at 358 ("Although it would have been preferable for the court to mention by name the § 3553(a) factors and § 5G1.3(c) of the Guidelines, it did not plainly err by failing to do so" because it "made 'generally clear the rationale under which it imposed the consecutive sentence'"); *Hall*, 632 F.3d at 336 ("Though the district court did not mention § 5G1.3 specifically, in light of its entire explanation, it is evident that the district court considered § 5G1.3(c) and adequately explained its reasons for applying it when sentencing Hall"); *Hartman*, 426 F. App'x at 400 ("although not referenced explicitly by the court at the sentencing hearing, the record demonstrates that the court

was aware of the relevant Guidelines provision"); *United States v. Bost*, 705 F. App'x 141, 144 (4th Cir. 2017) (no procedural error where "district court did not mention § 5G1.3" but record showed it "was mindful of the circumstances that [the section's] commentary directs a district court to contemplate").   As discussed above, the Court amply explained its rationale for imposing consecutive sentences.   Thus, there was no error to which counsel could object, and counsel was not ineffective for failing to raise a meritless objection.   *See Ryal*, 508 F. App'x at 520.

> ### ii.   Nassar Fails to Establish Prejudice

Nassar's claim also fails because he fails to establish prejudice.   Specifically, he fails to show a reasonable probability that, had his attorneys objected "to the adequacy of the Court's explanation" or its supposed "fail[ure] to consider USSG § 5G1.3(c)," "the outcome of the proceeding [before this Court] would have been different."   *Strickland*, 466 U.S. at 694.   For the reasons discussed above, the record establishes that there is no reasonable probability that a procedural objection along the lines Nassar suggests would not have resulted in a lesser sentence. The Court was aware of all of the issues and the guideline provision, and it amply articulated its rationale for imposing consecutive sentences.   Nassar fails to explain how, *on this record*, an objection would have been reasonably likely to change the outcome.

## V.   NO HEARING IS NECESSARY

In an action to vacate or correct a sentence, the Court need not hold a hearing if the motion and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255(b). "The statute 'does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made.'"   *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (*quoting United States v. Todaro*, 982 F.2d

38

1025, 1030 (6th Cir. 1993)). Moreover, no evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted). Nor is an evidentiary hearing required when a petitioner makes only "bald assertions and conclusory allegations." *See Renico*, 455 F.3d at 733.

For the reasons stated above, no hearing is necessary because Nassar's motion and the record of the case conclusively show that he is not entitled to relief.

## VI. CONCLUSION

For the foregoing reasons, the United States respectfully requests that Nassar's Motion (R.64) under 28 U.S.C. § 2255 be denied for lack of merit without an evidentiary hearing.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: October 10, 2019

/s/ *Sean M. Lewis*
SEAN M. LEWIS
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2019, the foregoing document was electronically filed.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

A copy of the foregoing document will also be mailed on this date to:

> Lawrence Nassar · (No. 21504-040)
> U.S. Penitentiary Coleman II
> P.O. Box 1034
> Coleman, FL 33521

> /s/ *Sean M. Lewis*
> SEAN M. LEWIS
> Assistant United States Attorney